PAMELA K. GRAHAM, State Bar No. 216309
PGraham@chwlaw.us
JOHN A. ABACI, State Bar No. 166493
JAbaci@chwlaw.us
VERNETRA L. GAVIN, State Bar No. 343574
VGavin@chwlaw.us
**COLANTUONO, HIGHSMITH & WHATLEY, PC**
670 West Napa Street, Ste. F
Sonoma, CA 95476-6483
Telephone: (707) 986-8091
Facsimile: (707) 509-7295

Attorneys for Defendants
**COUNTY OF HUMBOLDT, HUMBOLDT COUNTY
BOARD OF SUPERVISORS, HUMBOLDT COUNTY
PLANNING AND BUILDING DEPARTMENT,
VIRGINIA BASS, MIKE WILSON, REX BOHN,
MICHELLE BUSHNELL, AND JOHN H. FORD**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**EUREKA DIVISION**

| | |
|---|---|
| CORRINE MORGAN THOMAS and DOUG THOMAS, a married couple; BLU GRAHAM; and RHONDA OLSON, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF HUMBOLDT, CALIFORNIA; HUMBOLDT COUNTY BOARD OF SUPERVISORS; HUMBOLDT COUNTY PLANNING AND BUILDING DEPARTMENT; VIRGINIA BASS, MIKE WILSON, REX BOHN, MICHELLE BUSHNELL, and STEVE MADRONE, in their official capacity as Supervisors of Humboldt County; and JOHN H. FORD in his official capacity as Planning and Building Director,<br><br>Defendants. | **Case No.: 1:22-cv-05725-RMI**<br><br>Assigned to the Magistrate Judge Robert M. Illman<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**FED R. CIV. P. 12(b)(1) and (6)**<br><br>**[Proposed] Order ISO Motion to Dismiss; Declaration of Pamela Graham; Request for Judicial Notice; [Proposed] Order ISO Request for Judicial Notice, filed concurrently herewith]**<br><br>Date:     Tuesday, January 10, 2023<br>Time:     11:00 a.m.<br>Ctrm:     Eureka Courthouse<br><br>Trial Date:     None Set |

**Colantuono, Highsmith & Whatley, PC**
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on January 10, 2023 at 11:00 a.m. or as soon thereafter as the matter may be heard, Defendants will, and do, move this Court for an order dismissing the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and (6). Alternatively, the City Defendants seek an order under Rule 12(b)(6) dismissing each and every claim based on the independent legal grounds discussed in this Motion.

The Complaint should be entirely dismissed because it does not establish standing as to any Plaintiff.  It does not plead injury in fact traceable to the challenged action or that any injury can be redressed here. Alternatively, the County moves to dismiss Counts One through Five for failure to state a claim for these reasons.

- The Complaint fails to Plead a Claim upon which relief may be granted;
- Plaintiffs failed to exhaust administrative remedies (Counts One, Two and Four);
- Plaintiffs redundantly and improperly sue individuals in their official capacities; and
- Individual Defendants are subject to legislative and qualified immunities.

Because these procedural deficiencies make amendment futile, the County seeks dismissal without leave to amend.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, Declaration of Pamela K. Graham; the concurrently-filed Request for Judicial Notice; the pleadings, records, and files in this action; and such other oral and documentary evidence as may be presented at or before the hearing.

DATED:  November 23, 2022

COLANTUONO, HIGHSMITH & WHATLEY, PC

_____
PAMELA K. GRAHAM
JOHN A. ABACI
VERNETRA L. GAVIN
Attorneys for Defendants
COUNTY OF HUMBOLDT, HUMBOLDT
COUNTY BOARD OF SUPERVISORS,
HUMBOLDT COUNTY PLANNING AND
BUILDING DEPARTMENT, VIRGINIA BASS,
MIKE WILSON, REX BOHN, MICHELLE
BUSHNELL, AND JOHN H. FORD

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................10

II.   FACTUAL BACKGROUND ..........................................................................10

    A.    Corrine and Doug Thomas Agree to Resolve Their Code Violations ...................12

    B.    Blu Graham Resolves His Code Violations ......................................................14

    C.    Efforts to Resolve Rhonda Olson's Code Violations Continue ............................15

III.  THE CLAIMS ARE PROCEDURALLY IMPROPER ....................................17

    A.    Plaintiffs Lack Standing ...............................................................................17

    B.    Plaintiffs Have Not Exhausted Administrative Remedies ................................18

    C.    Defendants Are Immune ................................................................................20

    D.    Plaintiffs Redundantly and Improperly Sue County Employees ........................20

IV.   ALL CLAIMS FAIL SUBSTANTIVELY ......................................................21

    A.    Plausible Allegations of Fact, Not Speculation,  Are Required .........................21

    B.    The Procedural Due Process Claim Fails .........................................................22

        1.    The County Gave Adequate Notice and Opportunity for Hearing ...........22

        2.    Plaintiffs Do Not Allege Improper Delay ....................................23

        3.    Our Constitution Allows Contract Hearing Officers ......................25

    C.    There is No Jury Right in Administrative Hearings .........................................26

    D.    The Substantive Due Process Claim Also Fails ...............................................26

        1.    Substantive Due Process Ought Not To Be Invoked Here........................26

        2.    The Complaint Does Not Allege Egregious Conduct that "Shocks the Conscience" or a Gross Abuse of Authority ................................27

        3.    Plaintiffs Cannot Show County Code Enforcement Lacks a Rational Relationship to a Government Interest .......................................28

    E.    The Excessive Fines Claim Fails, Too ............................................................29

    F.    The Alleged Exactions Are Constitutional.......................................................30

        1.    Conditioning Land Use Approvals on Code Compliance is Lawful..........30

        2.    The Regulations Substantially Further the County's Purpose ..................30

V.    CONCLUSION...............................................................................................31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

295629.v7

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Laboratories v. Gardner,*
  387 U.S. 136 (1967)...................................................................................20

*Aiona v. Judiciary of State of Hawaii,*
  17 F.3d 1244 (9th Cir. 1994) .....................................................................24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................21

*Assoc. Gen. Contractors of Calif. v. Calif. State Council of Carpenters,*
  459 U.S. 519 (1983)...................................................................................22

*Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................20, 21, 24

*Ballinger v. City of Oakland,*
  24 F.4th 1287 (9th Cir. 2022) ....................................................................31

*Ballinger v. City of Oakland, California,*
  142 S. Ct. 2777 (2022)...............................................................................31

*Besaro Mobile Home Park, LLC v. City of Fremont,*
  289 Fed. Appx. 232 (9th Cir. 2008)...........................................................20

*Bogan v. Scott-Harris,*
  523 U.S. 44 (1998).....................................................................................20

*Brandon v. Holt,*
  469 U.S. 464 (1985)...................................................................................21

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,*
  149 F.3d 971 (9th Cir. 1998) .....................................................................22

*Chronicle Pub. Co. v. Nat'l Broadcasting Co.,*
  294 F.2d 744 (9th Cir. 1961) .....................................................................18

*Circu v. Gonzales,*
  450 F.3d 990 (9th Cir. 2006) .....................................................................22

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985)..............................................................................19, 23

*Club Moulin Rouge LLC v. City of Huntington Beach,*
  No. CV04-10546SVWRNBX, 2005 WL 5517234 (C.D. Cal. June 22, 2005) ......................23

*County of Sacramento v. Lewis,*
  523 U.S. 833 (1998)..............................................................................27, 28

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Dolan v. City of Tigard*,
    512 U.S. 374 (1994) ............................................................................31

*Dotson v. Griesa*,
    398 F.3d 156 (2d Cir. 2005) ...............................................................18

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .............................................................22

*Exxon Corp. v. Heinze*,
    32 F.3d 1399 (9th Cir. 1994) .............................................................25

*Fitzgerald v. State*,
    1997 WL 579193 (D. Ariz. July 9, 1997) ...........................................24

*Giuliani v. Springfield Twp.*,
    238 F. Supp. 3d 670 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018) ..............23, 28

*Graham v. Connor*,
    490 U.S. 386 (1989) ...........................................................................27

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ...........................................................................20

*Hess v. Bd. of Trustees of S. Illinois Univ.*,
    839 F.3d 668 (7th Cir. 2016) .............................................................26

*Highway Materials, Inc. v. Whitemarsh Twp.*,
    386 F. App'x 251 (3d Cir. 2010) ...................................................28, 29

*Kennerly v. United States*,
    721 F.2d 1252 (9th Cir. 1983) .......................................................22, 27

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ...........................................................................21

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013) ...........................................................................31

*Lucky Dogs, LLC v. City of Santa Rosa*,
    913 F.Supp.2d 853 (N.D. Cal. 2012) ..................................................25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................17

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...........................................................................23

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ...........................................................17

*McKart v. United States*,
    395 U.S. 185 (1969) ...........................................................................18

Colantuono, Highsmith & Whatley, PC

670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

5

295629.v7

*Metroflex Oceanside, LLC v. Newsom*,
    532 F.Supp.3d 976 (2021) ..........................................................................27

*Monell v. New York City Dept. of Social Services*,
    436 U.S. 658 (1978)..................................................................................21

*N. Pacifica LLC v. City of Pacifica*,
    526 F.3d 478 (9th Cir. 2008) ....................................................................29

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987)..........................31

*Pimentel v. City of Los Angeles*,
    974 F.3d 917 (9th Cir. 2020) ..............................................................29, 30

*S.E.C. v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ..................................................................23

*Sabri Properties, LLC v. City of Minneapolis*,
    No. 18-CV-3098 (MJD/HB), 2019 WL 1559475 (D. Minn. Mar. 6, 2019) ...............26, 27

*Sampson v. Cty. Of Los Angeles by & through Los Angeles Cty. Dep't of Child. &
    Fam. Servs.*,
    974 F.3d 1012 (9th Cir. 2020) ..................................................................20

*Shanks v. Dressel*,
    540 F.3d 1082 (9th Cir. 2008) ..............................................................28, 29

*Smith v. City of Berkeley*,
    No. C 13-4947 PJH, 2014 WL 1230692 (N.D. Cal. Mar. 21, 2014) ........18

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ....................................................................21

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,
    163 F.Supp.3d 755 (C.D. Cal. 2015) ........................................................10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..............................................................................17

*U.S. v. Amalfi*,
    47 F.4th 114 (2d Cir. 2022) ......................................................................29

*U.S. v. Bajakajian*,
    524 U.S. 321 (1998)..................................................................................29

*U.S. v. Palma*,
    7 Fed. Appx. 748 (9th Cir. 2001)..............................................................25

*U.S. v. Streich*,
    560 F.3d 926 (9th Cir. 2009) ....................................................................17

**Colantuono, Highsmith & Whatley, PC**
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

6

295629.v7

*United States v. Antoine*,
　906 F.2d 1379 (9th Cir. 1990) ..................................................................24, 25

*Valley Forge Christian College v. Americans United for Separation of Church &*
　*State, Inc.*,
　454 U.S. 464 (1982) ..................................................................................17

*Washington v. Barr*,
　925 F.3d 109 (2d Cir. 2019) ........................................................................18

*Woodford v. Ngo*,
　548 U.S. 81 (2006) ...............................................................................18, 19

**State Cases**

*Association of Deputy District Attorneys for Los Angeles County v. Gasc*
　*ón* (2022) 79 Cal.App.5th 503, 537–38 ......................................................24

*Lent v. California Coastal Com.*
　(2021) 62 Cal.App.5th 812 .........................................................................30

*Maral v. City of Live Oak*
　(2013) 221 Cal. App. 4th 975 ......................................................................27

*People v. Braum*,
　49 Cal.App.5th 342 (2020) ........................................................................30

*Sweeney v. California Regional Water Quality Control Bd.*,
　61 Cal.App.5th 1093 (2021) ..................................................................30, 31

**Federal Statutes**

42 U.S.C. § 1983 ...........................................................................10, 18, 20

**State Statutes**

California Civil Code, § 3514 ........................................................................32

California Civil Code, § 3517 ........................................................................32

California Civil Code, § 3521 ........................................................................32

California Government Code § 53069.4 .....................................................11, 12

Humboldt County Code § 331-14 ...................................................................14

Humboldt County Code § 352 .......................................................................11

Humboldt County Code § 352-2 ....................................................................11

Humboldt County Code § 352-3(m) ...............................................................11

Humboldt County Code § 352-4 ....................................................................23

7

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**Colantuono, Highsmith & Whatley, PC**
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

Humboldt County Code § 352-5 ........................................................................... 13

Humboldt County Code § 352-5(a) ...................................................................... 11

Humboldt County Code § 352-5(b)(2) ................................................................. 11

Humboldt County Code § 352-5(d) ...................................................................... 11

Humboldt County Code § 352-6 ........................................................................... 31

Humboldt County Code § 352-6(a) ...................................................................... 11

Humboldt County Code § 352-6(b) ................................................................. 11, 12

Humboldt County Code § 352-7 ........................................................................... 23

Humboldt County Code § 352-8 ..................................................................... 19, 23

Humboldt County Code § 352-8(a) ...................................................................... 11

Humboldt County Code § 352-8(g) ...................................................................... 11

Humboldt County Code § 352-8(j) ....................................................................... 11

Humboldt County Code § 352-8(l)(ii) .................................................................. 11

Humboldt County Code § 352-8(l)(iii) ................................................................. 11

Humboldt County Code § 352-8(m) ..................................................................... 11

Humboldt County Code § 352-8(n) ...................................................................... 11

Humboldt County Code § 352-9 ........................................................................... 11

Humboldt County Code § 352-10 ......................................................................... 23

Humboldt County Code § 352-11 .................................................................... 23, 24

Humboldt County Code § 352-12 .................................................................... 11, 23

Humboldt County Code § 352-12(a) .................................................................... 12

Humboldt County Code § 352-12(b) .................................................................... 12

Humboldt County Code § 352-12(c) .................................................................... 12

Humboldt County Code § 352-13 ............................................................... 11, 12, 23

Humboldt County Code § 352-14(a) .................................................................... 12

Humboldt County Code § 352-14(c) .................................................................... 12

Humboldt County Code § 352-16(l) ..................................................................... 11

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

295629.v7

Humboldt County Code § 352-20 ...................................................................................19

**Rules**

Federal Rule of Civil Procedure, 8(a)(2) .......................................................................21

Federal Rule of Civil Procedure, 12(b)(1) .....................................................................17

**Constitutional Provisions**

4th Amendment ................................................................................................................27

8th Amendment ........................................................................................................29, 30

14th Amendment .............................................................................................................10

California Constitution, Article XI, § 7 .........................................................................27

**Colantuono, Highsmith & Whatley, PC**
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

295629.v7

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The County of Humboldt has a program to enforce its local laws as to cannabis cultivation. It uses drones to do so given the County's large area and low population density. Remedies for illegal cultivation and for illegal structures include fines. The County notifies property owners of apparent violations, offering administrative hearings to establish them on request. Plaintiffs each received a Notice of Code Enforcement Appeal Hearing and Notice of Administrative Civil Penalty Appeal Hearing. The Plaintiffs allege a violation of their constitutional rights by delayed hearings during the epidemic, denial of a jury right inapplicable to administrative hearing, and excessive fines.

No Plaintiff has standing as the injuries alleged are speculative and hypothetical. Plaintiffs failed to exhaust administrative remedies before suing in due process. Also, the unconstitutional exactions claim does not show the conduct the County seeks to compel is beyond its police power to require. The Individual Defendants have legislative and qualified immunities.  Finally, Plaintiffs redundantly sue both the County and its officials in their official capacities.

# II.   FACTUAL BACKGROUND

Plaintiffs Corrine Morgan Thomas and Doug Thomas, Blu Graham, and Rhonda Olson allege a class action against the County, its Board of Supervisors, and its Planning and Building Department under 42 U.S.C. § 1983, asserting: violation of their Fourteenth Amendment (1) procedural and (2) substantive due process rights; (3) violation of the prohibition against unconstitutional exactions; (4) violation of the prohibition against excessive fines; and (5) denial of a jury right. They challenge the County's code enforcement against them for their various violations of building, land use, and cannabis abatement laws. The allegations are vague, conclusory, and inadequate to state any justiciable claim. The whole story — which this Court may consider via judicially noticeable public documents (*Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F.Supp.3d 755, 762 (C.D. Cal. 2015)) — reflects appropriate and timely efforts to cure Plaintiffs' violations, which were either fully resolved or remain pending. The appropriate forum for any challenge is in those local administrative procedures. Plaintiffs' claims here are both premature and meritless.

The administrative fines chapter in the County Code details an adequate process to fine code violators to enforce local laws. Title III, Division 5, Chapter 2 of the Humboldt County Code ("HCC") titled "Administrative Civil Penalties" has these goals: (1) to protect the health, safety,

**Colantuono, Highsmith & Whatley, PC**
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

welfare of County residents; (2) to provide "objective criteria for the imposition of penalties and provide for a process to appeal the imposition" of those penalties; (3) to provide a method to punish those responsible for violations; and (4) to minimize the expense and delay associated with pursuing alternative remedies in court. HCC § 352-2. (Request For Judicial Notice ("RJN"), Exh. NN [entire HCC § 352].)

When the County learns of a violation, it begins enforcement with a "Notice of Violation and Proposed Administrative Civil Penalty." The Notice must state the "name and last known address of each responsible party." HCC § 352-8(a) It informs the cited party of Chapter 2's procedures, including: Opportunity to appeal a determination a violation has occurred and/or a proposed penalty amount. HCC §§ 352-8(g), 352-9. The County notifies each responsible party that an appeal will be heard by a hearing officer appointed by the County Board of Supervisors after notice of an appeal hearing. HCC § 352-8(j), 352-9. Notices also state a penalty is not final until 20 days after service of decision on any appeal if judicial review is not sought pursuant to California Government Code Section 53069.4. HCC §§ 352-8(l)(ii), 352-12. If judicial review is sought, a fine is final 10 days after the Superior Court's determination. HCC §§ 352-8(l)(iii), 352-13. The Notice also states a final penalty may become a lien against the property. HCC §§ 352-8(m), 352-16(l). Finally, the Notice states an additional Notice of Violation can be served if a new violation occurs or the existing violation continues 90 days after a penalty is imposed. HCC §§ 352-8(n), 352-5(d). Penalties for illicit cannabis cultivation — a widespread problem in the County — commence upon service of a "Notice of Violation and Proposed Administrative Civil Penalty," but are also subject to judicial review. HCC §§352-3(m), 352-5(b)(2), 352-13.

Chapter 2 details potential penalties. Any violation may incur up to $10,000 per day through the 90th day a violation is maintained. HCC §352-5(a). Factors which govern penalty amounts include the severity of a violation's impact, the number of complaints received, the willfulness and/or negligence of the responsible party, whether she took reasonable steps to prevent a violation, had actual or constructive knowledge of a violation's impacts, her degree of sophistication, prior violations, County staff time incurred, and her efforts to remediate the impacts. HCC § 352-6(a), (b). Fines "Categories 1 through 4" reflect degrees of willfulness and violation severity. HCC § 352-6(b).

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

A hearing officer may find no violation exists and may suspend or reduce a fine using these criteria or upon finding a responsible party acted promptly to remedy a violation. HCC § 352-12(a), (b).

A hearing officer decision is subject to judicial review under California Government Code section 53069.4. HCC § 352-13. Instructions for seeking that review accompany a hearing officer's ruling. HCC § 352-12(c). "[J]urisdiction to collect the final administrative civil penalty" and administrative costs and fees flows from a Notice of Violation and Proposed Administrative Penalty not reversed by a hearing officer or the Superior Court. HCC § 352-14(a). Absent a completed administrative proceeding, County staff is without authority to collect penalties. *Ibid*. The Planning Director can reduce or eliminate administrative costs, fees, and penalties and may make a "compliance agreement" with a responsible party to reduce or eliminate those charges to induce voluntary compliance. HCC § 352-14(c).

Plaintiffs claim this code enforcement process is unconstitutional because fines may be high, delays can occur, the County appoints the hearing officer and charges fees to cover appeal processing (akin to court filing fees), and the County does not grant new land use entitlements to those who persist in Code violations. (E.g., Compl. ¶¶ 38–51, 104–112, 154–168, and 175–179).

### A.    Corrine and Doug Thomas Agree to Resolve Their Code Violations

In mid-2021, satellite imagery and a recent realtor listing photographs revealed a metal building with multiple vents, cloning trays, and a reflective roof which was used to grow cannabis at a home in Miranda (274 Lower Cathey Ln., APN 211-391-011-000). (RJN, Exh. A; Compl. ¶ 212.) Realtor photographs showed multiple vents from the building and cloning trays leaning against it. (RJN, Exh. B.) The Thomases acquired this property from Summerville Creek LLC in August 2021. (RJN, Exh. B; Compl. ¶ ¶201 and 205.)

The County served notices of violation ("NOV") and to abate ("NTA") in August 2021 citing: (1) "unpermitted commercial cannabis operation with approximately 2,500 square feet of cultivation" and (2) a "structure facilitating commercial cannabis activity and constructed contrary to the provisions of the Humboldt County Code." (RJN, See Exhs. C-F.) The NOV notified the owners of possible penalties and an NTA told them how to remedy the violation. Each violation is a violation category 4, with a proposed penalty of $6,000. (*Id.*) The notices named Sommerville Creek as the "responsible party" and gave the responsible party 10 days to correct the violations, or be

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

subject to a daily administrative penalty of $12,000 (2 violations) for up to 90 days under HCC § 352-5. (Exh. C, p. 5.)  The NOV provided the information the ordinance requires, detailed *supra*.

Abatement required responsible parties to: (i) cease cannabis cultivation and remove all cannabis and infrastructure to grow it including power and irrigation infrastructure; and (ii) remove all structures connected to cannabis cultivation constructed in violation of local laws including applying for and obtaining any necessary demolition permit to protect health and safety. (Exh. D.) Inspector Brian Bowes signed the NOV and NTA and posted them on the property. (RJN, Exhs. C & D.)

With the Thomas's consent and their attorney present, the County inspected the site in September, confirming the greenhouse had been used to cultivate cannabis. (RJN, Exhs. G & H.) The Thomases did not wish to demolish it; the County inspector explained the County's then-policy requiring its removal. (RJN, Exh. K  [3/22/22 memo to Board of Supervisors on policy for removal of illicit structures].) The County never designated the Thomases as a responsible party via an NOV, but they appealed. (RJN, Exh. I.) But they did nothing to abate the nuisances over the next year.

In November 2021, the County and Thomases reached a Compliance Agreement to resolve the violation, which required demolition. The Thomases agreed to obtain a necessary demolition permit and remove the greenhouse within 6 months. (RJN, Exh. J [Nov. 12, 2021 Compliance Agreement, Recitals, ¶ 2.A.].) The County agreed to stay enforcement, collection actions, and service of an NOV and NTA naming the Thomases. (*Ibid.*) Upon performance by the Thomases, the County would dismiss the case. (*Id.*, ¶ 3.B.) If not, the County could serve a Notice to Abate Nuisance and Notice of Violation and Proposed Administrative Civil Penalty. (*Id.*, ¶ 2.E.) While the Thomases sought a demolition permit, they never picked it up, and have yet to demolish the illicit greenhouse. The agreement's term was six months.

In March 2022, with the Compliance Agreement in effect, the County advised the Thomases of a new policy (DPS-22-04) offering property owners a path to permit illicit cannabis structures, avoiding demolition, if they provide a restoration plan describing a non-cannabis use for a structure. (RJN, Exh. K.) In April 2022, the Thomases attorney notified the County of the Thomases wishes to benefit from this new policy. (RJN, Exh. MM [Email from ED to CEU 4/1/22 Re: Buildings of my clients].) The policy allows up to one year to seek necessary permits. While the Thomases have

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

applied for various permits since 2021, they have yet to apply for a permit to retain the illicit greenhouse, although they have submitted a restoration plan. The County has yet to issue an NOV naming the Thomases as responsible parties or to fine them.

### B.    Blu Graham Resolves His Code Violations

On May 10, 2018, the CEU served a NOV and NTA to Jesica Modic and Blu Graham for three cannabis violations on their property at 2899 Chemise Mountain Road, Shelter Cove (APN 108-281-002-000). (RJN, Exhs. L, M & N.)

(1) unpermitted grading (Humboldt Code § 331-14), including significant clearing exposing bare earth (risking erosion) and creating an unpermitted 2,500 square foot pond;

(2) construction in violation of building, plumbing and/or electrical codes (*Id.* § 331-28), specifically four unpermitted structures the County found consistent with the visual profile of greenhouses or "hoop houses" commonly used to grow cannabis; and

(3) violation of the commercial cannabis land use ordinance (*Id.* § 314-55.4). (*Id.*)

The County relied upon satellite data, as well as the Planning and Building Department's and other agencies' permit records, to establish the violations. (RJN, Exh. O [summary of code enforcement case].) The County chose this area for satellite analysis given the prevalence of commercial cannabis cultivation there as evidenced in County records of cannabis cultivation registrations, as well as a history of commercial cultivation there. (*Id*) The NOV cited a daily administrative penalty of $10,000 for up to 90 calendar days for these violations. (RJN, Exh. L.) The notices detailed Graham's appeal and hearing rights as the ordinances described above require. Abatement included obtaining permits for a restoration plan to correct the grading violations and construction issues, ceasing cannabis cultivation, and removing cultivation infrastructure. (RJN, Exh. M.) Graham abated two violations by showing no current cultivation and removing the unpermitted hoophouses. (RJN, Exh. O.)

In 2021, the County offered a compliance and no penalty agreement proposing remedial grading and filling the pond; Graham did not agree. (RJN, Exh. P [unsigned compliance agreement].) Instead, he appealed the NOV. (RJN, Exh. R.) In July 2022, he requested information on impacts of his code violations on a Safe Home application, saying he wished to keep the pond for fire-fighting. (RJN, Exh. R.)  The Safe Home program allows property owners to apply for permits

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

to retain unpermitted residential structures and additions by meeting certain criteria including compliance with County Code requirements without being penalized. (RJN, Exh. OO [Safe Home program packet].)  He provided an engineer's regrading proposal. (RJN, Exh. Q.) The County advised he needed pond and grading permits and placed his Safe Home application on hold pending compliance. (RJN, Exh. R).

In September 2022, the County mailed and posted on the property a Notice of Administrative Civil Penalty Appeal Hearing set for October 14. (RJN, Exh. S.) While the NOV cited $10,000 per day fines, the County reduced it to $1,000 daily as Graham had abated two violations, including the cannabis Category 4 violation. (RJN, Exhs. O & T.) Graham's attorney recommended these terms in a voicemail message proposing amendments to the County's form of compliance agreement.

Later that month, Graham visited the Planning and Building Department (without his attorney) seeking to resolve the remaining violation. Graham agreed with Planning and Building Director John Ford that Graham would (i) apply for a grading permit for the pond, and (ii) pay administrative costs. (RJN, Exh. U.) The County issued Graham his grading permit that same day, invoicing him for $3,474.10 in administrative costs. (RJN, Exh. V.) Ford confirmed these terms by email, and Graham responded a few hours later accepting them, promising to drop off a check for the fees. (RJN, Exh. U.) Accordingly, the County cancelled the appeal hearing. The County refunded Graham $2,951.18 in hearing preparation and noticing costs, asking him to pay just $523 for permit applications. (RJN, Exh. V [settlement packet].) The County issued Graham's grading permit in early October 3. (RJN, Exh. W.) This NOV is resolved.

### C.    Efforts to Resolve Rhonda Olson's Code Violations Continue

In April 2018, the County issued an NOV to Paul Zaccardo for unpermitted cannabis cultivation and unpermitted structures on APN 529-171-033 (1133 Red Cap Road). (RJN, Exh. Z.) In August 2020, the County Sheriff's office executed search warrants on the property at 1133 Red Cap Road as well as two other properties (APN 529-171-034-000 [1221 Red Cap Road], and 529-171-040-000 [1087 Red Cap Road]). (RJN, Exh. AA [inspection report].)  These three properties were all directly adjacent and determined through the execution of the search warrant to be part of a larger cannabis cultivation operation. (Exh. AA, p. 3.)  Olson purchased 1133 Red Cap Road and two other properties in September 2020 — all with active code enforcement cases. (Compl., ¶ 311, 313

& 331 .)  The other two properties are commonly known as 1030 (APN 529-181-036) and 1030A (APN 529-181-038) Red Cap Road. (Exhs. PP and QQ.) That same month, the County issued an NOV to "Lb 4 Lb Corporation" as the responsible party for violations at 1030 Red Cap Road) and to "Paul Zaccardo" as the responsible party for violations at 1133 Red Cap Road. (RJN, Exhs. BB and CC.).  Two parcels required a grading assessment and plan to correct an unpermitted tunnel under an industrial building. Additionally, the County cited unpermitted cannabis cultivation and greenhouses, solid waste and a junk vehicle on the property, and unpermitted grading. (*Id.*)  It issued no NOV naming Olson as a responsible party for violations at either 1030 or 1133 Red Cap Road.

Soon thereafter, Olson asked the County about the violations, learning corrective actions were needed on all the properties. (RJN, Exh.DD.) The County allowed her time to abate before serving any notices on her. *Ibid.* Days later, Olson's consultant submitted an Initial Plan for Restoration, asking for more time to comply. (RJN, Exh. EE.) Olson has taken no further abatement action to date, and months later in March 2021, her new consultant again discussed remedial grading with the County. (RJN, Exh. DD.) Another year passed without action by Olson.

In April 2022, the County served a new NOV and NTA naming Olson, identifying continuing violations and needed corrections. (RJN, Exhs. FF & JJ.) The NOV cites four violations on APN 529-171-033 (1133 Red Cap Road) for daily fines of $1,000 (for one violation) and $10,000 (for the other three) up to 90 days after a 10-day period to abate the nuisances. (Exh. FF.) Only this NOV names Olson as a responsible party. (RJN, Exhs. FF, BB & CC [3 NOVs])  Olson timely appealed. (RJN, Exh. GG.)

In May 2022, yet a third consultant submitted a remediation plan. (RJN, Exh. HH**.**) The County approved it for APN 529-181-038 (1030A Red Cap Road)), but as to the other properties, it required removal of a cannabis structure and infrastructure and solid waste and filling 45 holes on APN 529-171-033 (1133 Red Cap Road) and permits for a 10,000 square-foot graded area, and for an accessory building connected to cannabis cultivation, and removing remaining cultivation refuse and infrastructure from APN 529-181-036 (1030 Red Cap Road). (RJN, Exh. II.) Olson has agreed to comply and the April 2022 NOV remains open, although the County remains hopeful of resolution.

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

## III.   THE CLAIMS ARE PROCEDURALLY IMPROPER

### A.   Plaintiffs Lack Standing

Plaintiffs lack Article III standing. Under FRCP 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. A standing challenge is appropriately raised under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To satisfy Article III's case or controversy requirement, a plaintiff must show he has suffered an injury in fact, traceable to the challenged action, which a favorable decision can redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). Injury must be "concrete, imminent and particularized." *Id.* And a claim must affect a plaintiff's own rights or interests, not those of others. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75 (1982) (courts do not adjudicate "abstract questions of wide public significance" amounting to "generalized grievances"). In a suit for damages, the mere risk of future harm, standing alone, is not a concrete harm establishing Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). A claim is not "ripe" if it involves future events that may not occur as anticipated, or at all. *U.S. v. Streich*, 560 F.3d 926 (9th Cir. 2009).

Plaintiffs allege no injury in fact. Graham received his grading permit and paid only $523 in permit fees; he is no longer assessed fines. The County resolved his case and refunded all fees (other than permit fees). He owes no penalties.

The NOVs the Thomases appealed do not name them as responsible parties. They reached a Compliance Agreement and, as a result, the County issued no NOVs in their names. It is speculative that they will ever pay a penalty — they are seeking to resolve the violations under a new policy allowing them to maintain an unpermitted structure for non-cannabis uses. (RJN, **Exh.**  [Department Policy Statement 22-04].) Their case is hypothetical.

Olson has appealed an April 2022 NOV naming her as the responsible party. But her engineer has since contacted the County to resolve the violations. She, too, may never pay a fine. Her claims are also speculative. Neither the Thomases nor Olson paid any fine. Possible future fines resulting from their delay in complying with local law is not injury in fact. Any future harm is neither concrete nor imminent. Thus, Plaintiffs lack both injury in fact and standing.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

### B.    Plaintiffs Have Not Exhausted Administrative Remedies

A claim under 42 U.S.C. § 1983 ("§ 1983") challenging an administrative agency's procedure must be fully exhausted. Absent exhaustion, § 1983 claims are barred. *Dotson v. Griesa*, 398 F.3d 156, 161 (2d Cir. 2005); *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019). Thus, "[a]lthough a plaintiff is generally not required to exhaust administrative remedies prior to bringing a § 1983 suit, this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate." Plaintiffs' administrative appeal is a remedy entitled to judicial deference. *Chronicle Pub. Co. v. Nat'l Broadcasting Co*., 294 F.2d 744, 747–48 (9th Cir. 1961); *McKart v. United States*, 395 U.S. 185, 193 (1969) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"). Any finding here of a due process violation, a challenge to the County's evidence or administrative searches, or the proposed fines would restrain ongoing administrative proceedings, which federal courts rarely do. *Smith v. City of Berkeley*, No. C 13-4947 PJH, 2014 WL 1230692, at *7 (N.D. Cal. Mar. 21, 2014) ("Resolution of plaintiff's administrative appeal of the Nuisance Order is a 'condition precedent' to this litigation, and the court is obligated to give substantial weight to that fact. … [T]he City should be free to litigate the appeal that plaintiff filed to conclusion before being required to defend against an action that raises many of the same factual and legal issues.").

Exhaustion of administrative remedies serves: (1) to protect an agency's authority and autonomy to correct its own mistakes before federal litigation and (2) to promote efficiency as claims can be more quickly and economically resolved administratively than in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Exhaustion requires completing all steps an agency's requirements — meeting deadlines and satisfying other procedures — so the agency can address issues on their merits. *Id*. "The general rule is that courts should not topple over administrative decisions" unless the administrative body erred despite plaintiff's timely objection under the agency's practice. *Id*.

Plaintiffs cannot complain about procedures of which they have not availed themselves. Until they pursue their local remedies, the penalties they fear are neither final nor enforceable. Here, the County's administrative process detailed in Humboldt Code § 352-8 – §352-20 is prerequisite to suit. The notices of violation, to abate, and of appeal hearings describe the relevant process and deadlines.

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

(RJN, Exhs. C, D, L, M, S, Z, BB, CC, FF, and JJ.) While Plaintiffs claim procedural due process violations (Compl. ¶¶ 13, 375), none has exhausted administrative remedies:

- As yet unnamed as responsible parties in any NOV, the Thomases have not completed an administrative hearing. Instead, they signed a compliance agreement, agreeing to seek demolition permit in exchange for a stay of enforcement, never picking up the permit or executing it. Instead, they now seek a permit to retain the structure under new County policy (DPS-22-04), and have submitted a restoration plan. The County has issued them no final adverse ruling and judicial relief must await penalties yet to be imposed.

- Nor has the County issued a final ruling against Olson as to the April 2022 NOV which names her. Until she completes her appeal, the County can impose no penalty. While just months ago the County approved her restoration plan for one property, requesting changes as to her other two parcels, Olson has taken no further action nor sought permits. Her administrative case is ongoing. As with Graham, resolution may yet be reached.

- Graham waived his hearing set for October 2022, settled, received his permit, and the County refunded nearly all his fees. Even if he had any remaining injury (he does not), he cannot complain the procedural adequacy of an appeal he abandoned.

The first question as to a procedural due process claim is whether a plaintiff has been deprived of a federally recognized interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Here, penalties are merely proposed. The County cannot finally impose or collect them until appeals are completed. As all violations challenged here were appealed, and have not been resolved against Plaintiffs, they have been deprived of nothing. Only when a property right is identified may the process due be determined. As to Graham, no interest will ever be impaired due to the facts alleged here. As to the Thomases and Olson, it may never happen. Because the County has not completed its appellate process as to any Plaintiff, their due process claims are unripe.

Moreover, vague allegations of delay or other misbehavior by the County or its hearing officers do not make their claims ripe. (Compl., ¶¶ 9, 46, 135, 140, 149, and 164-171.) *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Besaro Mobile Home Park, LLC v. City of Fremont*,

289 Fed. Appx. 232 (9th Cir. 2008) (mobile home park's as-applied takings challenge to city's vacancy rent control ordinance unripe for failure to exhaust remedies); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967).

### C.   Defendants Are Immune

Local officials are absolutely immune from a § 1983 challenge to legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity"). The immunity applies when policymakers make discretionary, policymaking decisions in a field in which legislators traditionally have power to act. *Id.* at 56. Officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Sampson v. Cty. Of Los Angeles by & through Los Angeles Cty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020).) A right is "clearly established" if every reasonable official would understand and have fair warning his conduct violated that right when he acted. (*Id.*)

Plaintiffs challenge the County's Cannabis Code, legislation the Defendants have authority to adopt. As they are performing discretionary functions—such as enforcing laws and scheduling hearings in compliance with that code — they are shielded from civil damages. Director Ford's discretionary actions enforced County permit laws. Compl., ¶¶ 300. Plaintiffs do not allege unreasonable conduct that violates their rights made unlawful by clearly established law. If they did, qualified immunity protects the Individual Defendants. Thus, legislative, discretionary, and qualified immunity protect the Individual Defendants  and they should be dismissed for that reason.

### D.   Plaintiffs Redundantly and Improperly Sue County Employees

Plaintiffs redundantly sue County Supervisors and the Planning and Building Director in their official capacities along with the County. Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). Once the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). It is not a suit against the officials personally — the entity is the real party in interest. While a damages award against an official in his personal

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

capacity can be executed only against his personal assets, a plaintiff seeking damages judgment in an official-capacity suit must look to the entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Suing County Supervisors for legislative conduct and the Planning Director for tasks in the scope of his employment are official-capacity claims — Plaintiffs can allege no acts in their personal capacities. This is a suit against the County and the Court should dismiss the Individual Defendants.

## IV.   ALL CLAIMS FAIL SUBSTANTIVELY

### A.   Plausible Allegations of Fact, Not Speculation, Are Required

This Court may dismiss a claim for failure to allege either: (1) a cognizable legal theory, or (2) sufficient facts to raise a reasonable expectation that discovery will reveal evidence of such a theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

A well-pleaded complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 544. A plaintiff may not merely allege conceivable conduct, but must allege "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts construe allegations most favorably to a plaintiff, they need not accept conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted deductions of fact. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor need they assume a plaintiff can prove facts not alleged. *Assoc. Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and requires the reviewing court to draw on its judicial experience and common sense." *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 679).

Plaintiffs make bald claims unsupported by facts to address even legal elements of their claims. They allege delay in hearing appeals, a non-existent right to jury trial in an administrative proceeding, impropriety in the County's use of contract hearing officers, the potential for (but not the fact of) excessive fines, and a County policy requiring code compliance before new land use rights are conferred. (Compl., ¶¶ , 113-122, 154-171, 417, 422, 439, 442, 446, & 455-471.)  None of these

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

allegations is presented with sufficient factual detail to satisfy the federal pleading standard. What specifically places hearing delays at the County's door? On what basis do they claim a jury right? What specific risk of unacceptable bias arises form use of contract hearing officers? What fine has become final and collectible? What basis to argue that one is entitled to seek new land use approvals while maintaining existing unlawful conditions? The Complaint leaves the reader to speculate on each point. The required detail is absent.

**B.    The Procedural Due Process Claim Fails**

**1.    The County Gave Adequate Notice and Opportunity for Hearing**

Plaintiffs incorrectly plead a substantive due process standard under Procedural Due Process. (Compl. ¶ 381.)  To the extent Plaintiffs challenge the County's procedures for administrative appeal and judicial review of NOVs and proposed penalties, they cannot establish a lack of adequate notice or opportunity to be heard. *Circu v. Gonzales*, 450 F.3d 990, 991 (9th Cir. 2006).

Due process does not require a hearing with all the procedures courts provide. An administrative hearing before an impartial decisionmaker employed by the agency suffices. *Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983). To allege a procedural due process claim, one must allege (1) deprivation of a liberty or property interest, and (2) constitutional inadequacy of the administrative procedures government offers to remedy the deprivation. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971 (9th Cir. 1998); *Giuliani v. Springfield Twp*., 238 F. Supp. 3d 670 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018). Procedural due process does not necessarily require "a full evidentiary hearing including the right to confront and cross-examine adverse witnesses." *Club Moulin Rouge LLC v. City of Huntington Beach*, No. CV04-10546SVWRNBX, 2005 WL 5517234, at *5 (C.D. Cal. June 22, 2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

The County's proceedings provide "notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citations omitted). "The specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Some type of notice and an opportunity to be heard before the deprivation of a protected interest generally suffice and courts routinely determine this as a matter of law. *Cleveland Bd. of Educ.*, 470 U.S. at 541.

The County affords property owners detailed notice and an opportunity to be heard both in an administrative appeal and on judicial review. HCC § 352-11. Notice requires personal service or service by certified, first-class mail. HCC § 352-4. NOVs name responsible parties, list the property in issue, and describe violations and potential penalties. HCC §§ 352-7, 352-8. An NOV also notes its recipient can appeal it. The Code details requirement for an appeal. *Id.* at §§ 352-8. A hearing notice details hearing procedures. HCC §§ 352-10, 352-12. The hearing officer's decision is subject to judicial review. HCC § 352-13. That notice was adequate is evidenced by the facts that Plaintiffs here were able to file timely appeals when they wished to do so.

Appeals are heard by hearing officers on "sworn testimony" of all desiring to testify as to a violation and a proposed penalty. HCC § 352-11.

All Plaintiffs received notice and opportunity to be heard. None can allege a procedural due process violation on these ordinances or the facts alleged. The County satisfies *Mathews*' requirements for administrative due process.

### 2. Plaintiffs Do Not Allege Improper Delay

One alleging due process violations by delay must particularly allege improper delay and resulting prejudice. *Twombly*, 550 U.S. at 544; *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir. 1990) (extreme, prejudicial delay in processing appeal required for due process violation); *Fitzgerald v. State*, 1997 WL 579193 (D. Ariz. July 9, 1997) (requiring showing of causal connection between alleged due process violation and alleged harm). Prejudice cannot be presumed from the fact of delay alone. Plaintiff must plead how any delay deprived them of meaningful notice and opportunity to be heard. Plaintiffs cannot. They allege delay alone — with no showing of prejudice or even to whom the delay should be ascribed. Due process requires **opportunity** for a timely hearing; government need ensure it occurs despite an appellant's own delays and non-cooperation.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

First, Humboldt's Code requires a hearing no sooner than 15 days after service of notice of violation to allow an appellant to prepare for the hearing — the County has all the evidence it needs before it issues an NOV. Humboldt Code § 352-11. Due process sets no firm deadline for an administrative appeal; understandably given the wide range of proceedings at the federal, state and local levels to which the doctrine applies. *Aiona v. Judiciary of State of Hawaii*, 17 F.3d 1244, 1250 (9th Cir. 1994) (ruling that administrative hearing be held as soon as practical satisfies due process). If delay is overly long and prejudices a plaintiff, a state or federal court could compel timely action. (E.g., *Antoine*, 906 F.2d at 1383 (listing potential remedies for unconstitutional delay in appeal from criminal conviction); *Association of Deputy District Attorneys for Los Angeles County v. Gascón* (2022) 79 Cal.App.5th 503, 537–38, review granted (court could compel District Attorney to perform mandatory duty to plead prior strikes).

Second, facts which this Court may notice show any delay was largely due to Plaintiffs' (in)actions, their counsel's delayed communications, or their serial efforts to resolve violations. For example, the County currently awaits the Thomases' actions either to obtain a permit to maintain or demolish their greenhouse. Their Compliance Agreement stayed all enforcement for six months through April 2022. In that month their counsel informed the County they wanted to keep their building under a new County policy (DPS-24) . (Exh. MM). The Thomases plead they requested a hearing on September 2, 2021 — a little over a year ago. (Compl. ¶ 239.) While no set time requirement for hearings exists, this timeframe does not exceed reason, particularly in a County that has to juggle ordinary building compliance issues with myriad cannabis regulation issues amid global pandemic.  Indeed, a trial court recently determined in an unpublished decision on these facts that a two-year period is not unreasonable (RJN, Exh. LL). In *White Circle Commerce, LLC v. County of Humboldt* (2022) No. CV2000623 (consolidated with No. CV2000513), the Superior Court determined the delay aided plaintiffs by allowing time to seek resolution and time for the County to investigate. See also *U.S. v. Palma*, 7 Fed. Appx. 748 (9th Cir. 2001) [two-year delay in hearing criminal appeal not excessive]; *Antoine*, 906 F.2d at 1382 (three-year delay in criminal appeal "substantial," but not alone sufficient to violate due process).

Graham does not plead when he requested a hearing or prejudicial delay. (Compl. ¶ 295.) County records show his hearing was scheduled for May 13, 2018. (Exh S), but he waived any delay

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7

claim by settling.  (Exhs. U &V). County records show activity, such as meetings, warning letters to Graham, and a Compliance Agreement offer between 2018 and 2022. (Exhs. P, T-V).

Olson requested a hearing on October 7, 2020 (Compl. ¶ 335), but was not the subject of an NOV until April 2022, which resulted from her delay and inaction; the County reasonably understood from her three, serial consultants proposals that she preferred informal resolution to hearing. (Exhs. EE,  HH, II & KK.) Both the Thomases and Olson lead the County to believe they preferred informal resolution, starting and stopping applications for approval of remediation plans. In short, no Plaintiff shows the County was responsible for delay or that he or she was prejudiced by it.

### 3.    Our Constitution Allows Contract Hearing Officers

Plaintiffs claim improper bias because the County contracts for the services of hearing officers.  Unilateral hiring of hearing officers does not violate due process. *Lucky Dogs, LLC v. City of Santa Rosa*, 913 F.Supp.2d 853, 863 (N.D. Cal. 2012). Plaintiffs must plead more — facts to establish they have been harmed by a biased tribunal. *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1403 (9th Cir. 1994). As there has yet been no hearing, they cannot. If a contract hearing officer were unduly partial to the County's position, judicial review in Superior Court is surely sufficient to cure the error. Ex.NN, §352-13.  So, Plaintiffs are entitled to due process under the County's ordinances before penalties become final even if one hearing officer or another did not act with necessary impartiality.

"A party seeking to show bias or prejudice by an administrative decision maker [must] prove the same with concrete facts: bias and prejudice are never implied and must be established by clear averments." *Hess v. Bd. of Trustees of S. Illinois Univ.*, 839 F.3d 668 (7th Cir. 2016). A party's perception of an appearance of bias is not grounds for disqualification, for no system could function if hearing officers were so easily disqualified. A claimant must show his rights were violated to show bias. *Id.* at 675. A "specific foundation" is required to suspect prejudice rendering an agency unable to fairly consider evidence at a hearing — it must offer "specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias." *Id.*

No per se due process violation arises because a hearing officer is selected and paid by the County  — evidence is also needed of (1) arbitrary and capricious decision-making, (2) the agency's

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

**Colantuono, Highsmith & Whatley, PC**
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

refusal to re-hire the hearing officers who ruled against it, or (3) that hearing officers acted in their personal interest. *Sabri Properties, LLC v. City of Minneapolis*, No. 18-CV-3098 (MJD/HB), 2019 WL 1559475, at *3 (D. Minn. Mar. 6, 2019), report and recommendation adopted, No. CV 18-3098 (MJD/HB), 2019 WL 1558490 (D. Minn. Apr. 10, 2019).

Plaintiffs allege none of these. They allege no specific facts to support a claim the County's contract hearing officers are biased. Nor do they plead those officers have a disqualifying financial or other interest in the outcome. They plead only a unilateral perception of bias. (Compl. ¶ 10.)

Plaintiffs' vague, frail hearsay allegations do not sustain their burden. Compl. ¶ 151 (alleging "In more than one instance, Code Enforcement officials warned landowners that an appeal is not in their personal interest because the County does not lose before its own hearing officer.") Plaintiffs do not identify these officials or allege when these alleged "threats" occurred. Plaintiffs offer hearsay on hearsay: "Warren Black told Blu … no one can win their administrative hearing before the County's hand-picked hearing officer." (Compl. ¶ 290.) Plaintiffs continue with a conclusory statement the County always wins appeals. (Compl. ¶ 153.) District Attorneys win most criminal trials, too, but this is not evidence of unfair process, but of wise decisions not to try weak cases. The Complaint alleges no concrete facts to support their broad-brush attack on the neutrality (and ethics) of the lawyers the County contracts to conduct hearings.

### C.    There is No Jury Right in Administrative Hearings

Plaintiffs baselessly plead a jury right in the County's administrative hearings. *Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983) (administrative hearing does not require court or jury trial). Administrative hearings need not be tried to a jury. *Sabri Properties, LLC v. City of Minneapolis*, No. 18-CV-3098 (MJD/HB), 2019 WL 1559475, at *8 (D. Minn. Mar. 6, 2019), report and recommendation adopted, No. CV 18-3098 (MJD/HB), 2019 WL 1558490 (D. Minn. Apr. 10, 2019). This claim fails as a matter of law and no amendment can save it.

### D.    The Substantive Due Process Claim Also Fails

#### 1.    Substantive Due Process Ought Not To Be Invoked Here

To state a substantive due process claim, a plaintiff must allege: (1) a property interest or fundamental right, and (2) the defendant infringed that right by conduct that "shocks the conscience" or suggests a gross abuse of authority. *Metroflex Oceanside, LLC v. Newsom*, 532 F.Supp.3d 976,

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

981 (2021); *Graham v. Connor*, 490 U.S. 386, 395 (1989). The County's police power allows it to prohibit cannabis cultivation. *Maral v. City of Live Oak* (2013) 221 Cal. App. 4th 975; Cal. Const., art. XI, § 7. Plaintiffs have no right, and certainly no constitutional right, to grow cannabis — federal contraband. (*Id.*) Further, where a particular amendment provides an explicit textual source for a claimed right courts ought not to apply the "generalized notion of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (high-speed police chase not subject to 4th Amendment subject to substantive due process analysis). Plaintiffs allege procedural due process clams, which sufficient to analyze the essence of their concerns here.  Resort to substantive due process is unwarranted.

### 2.      The Complaint Does Not Allege Egregious Conduct that "Shocks the Conscience" or a Gross Abuse of Authority

Nor do Plaintiffs plead conduct that shocks the conscience or is arbitrary in violation of substantive due process. (Compl. ¶ 386–415.) The essential question is whether government officials' behavior is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833. Such is not the case here.

"Only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective. *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (cleaned up). Examples of such acts that include forced pumping of a suspect's stomach, acts evidencing corruption or self-dealing, bias against an ethnic group. *Giuliani v. Springfield Twp*., 238 F.Supp.3d 670, 696–97 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018). Examples which fall below this high standard include claims that local officials delayed permits and approvals, improperly increased tax assessments and "maligned and muzzled" claimants. *Id.* at 697. The Third Circuit held that local officials who intentionally misapplied ordinances and disregarded their state law duty to evaluate land use proposals in good faith did not "shock the conscience." *Highway Materials, Inc. v. Whitemarsh Twp*. ("*Highway*"), 386 F. App'x 251, 258 (3d Cir. 2010).

Here, Plaintiffs see a substantive due process violation in their dislike of the County's "policy, practice, and custom of issuing citations and imposing penalties for Code violations allegedly related to cannabis cultivation." (Compl. ¶ 387.) This is not shocking behavior, but a policy

dispute about appropriate land use regulations and how to enforce them — disputes our separation of powers assigns to the political branches. Regulating cannabis activity to protect the environment from water quality and other risks, neighbors from unwanted noise and smell, and public safety given that cannabis is highly portable contraband under federal law, its commerce is often conducted in cash and crops often protected by dogs and guns. E.g., N. Lastreto & S. Chaitanya, "Stoned Security: How Cannabis Farmers Protect Themselves in the Emerald Triangle," https://merryjane.com/culture/stoned-security-how-cannabis-farmers-protect-themselves-in-the-emerald-triangle (as of Nov. 20, 2022) This hearsay news report need not be proven true to suggest a rational basis for the County's policy choices.

Plaintiffs' claims, such as permit denials, do not shock the conscience when compared to the rate cases which do show a substantive due process violation. Humboldt's policy requiring permits for legal cannabis cultivation and plans to remediate illicit grow do not shock the conscience; these policies do not compare to forced stomach pumping in search of evidence, government corruption or self -dealing, or ethnic bias. As *Highway Materials* demonstrates, even bad-faith misapplication of ordinances does not violate substantive due process. While Plaintiffs plead ambiguously, the County understand permit denials to be their core. But *Highway Materials* shows that cannot be enough, lest every land use dispute come to federal court in substantive due process guise.

### 3.   Plaintiffs Cannot Show County Code Enforcement Lacks a Rational Relationship to a Government Interest

In due process, courts leniently review a statute which does not implicate suspect or quasi-suspect classifications or burden fundamental rights, demanding only that classifications be rationally related to legitimate governmental interests. *U.S. v. Amalfi*, 47 F.4th 114 (2d Cir. 2022). Plaintiff must show a land use policy lacked a rational relationship to a government interest — an "exceedingly high burden." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008); *Shanks*, 540 F.3d at 1088. Many conceivable public health and safety grounds rationally related the County's policies to routine government interests, as noted above. See also *United States v. Amalfi*, 47 F.4th 114 (2d Cir. 2022) (justifying total ban on cannabis).

Humboldt's Cannabis Code does not implicate suspect or quasi-suspect classifications, nor burden fundamental rights as discussed above. Accordingly, rational basis review applies, and

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs fail to show that cannabis regulation lacks a rational relationship to such County's interests as environmental quality, preservation of residential quality of life, and encouraging fair competition for those who bear the burn to operate in the nascent legal market for cannabis.

**E.    The Excessive Fines Claim Fails, Too**

The Eighth Amendment bars excessive fines. *U.S. v. Bajakajian*, 524 U.S. 321, 327 (1998). To satisfy the Excessive Fines Clause, a forfeiture must fulfill two conditions: property forfeited must be an "instrumentality" of a crime, and its value must be proportional to the owner's culpability. *U.S. v. Bajakajian*, 524 U.S. 321, 326 (1998). Proportionality can be judged only in light of a fine actually imposed and the circumstances of a violation. *Pimentel v. City of Los Angeles*, 974 F.3d 917, 923 (9th Cir. 2020).

"To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimental*, 974 F.3d at 921; see also *People v. Braum*, 49 Cal.App.5th 342 (2020), review denied (upholding $6m fine on landlord for tenant's illicit use of property as marijuana dispensary).

Here, Plaintiffs Thomas alleges $12,000 a day in fines might reach $468,000. (Compl. ¶ 208 & 228.) Plaintiff Graham alleges $10,000 in fines a day might reach $900,000. (Compl. ¶ 248 & 277.) Finally, Plaintiff Olson alleges $104,000 in fines per day for three violations might reach $7,470,000. (Compl. ¶ 331 & 348.) They cannot allege the County has actually imposed these fines on anyone and, California courts have upheld far larger fines for persistent, knowing violations of land use laws. E.g., *Lent v. California Coastal Com*. (2021) 62 Cal.App.5th 812, cert. denied (upholding $4.185m fine for blocking public beach access). Until a fine is finally imposed, there can be no claim of constitutional excess. Plaintiffs also allege the excessive fines clause is violated by the County's order to remove unpermitted structures, but the excessive fines clause does not govern that claim, which is a land use standard, not a penalty. *Lent* upheld a large penalty for blocking a public beach by refusing to remove unpermitted deck, staircase and gate from a public beach access easement, analyzing the fine, but not the duty to remove encroaching construction, under the Eighth Amendment. Similarly, *Sweeney v. California Regional Water Quality Control Bd.*, 61 Cal.App.5th

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1093 (2021) found no Eighth Amendment Concern in an order to abate unpermitted reconstruction

of a levee on wetland marsh island and upheld $2.8m in penalties for the violation.

### F.     The Alleged Exactions Are Constitutional

#### 1.     Conditioning Land Use Approvals on Code Compliance is Lawful

Plaintiffs claim a County policy to deny new land use permits to landowners who persist in

cannabis-related Category 4 violations violates the unconstitutional-conditions doctrine of the

Takings Clause. "Though the Takings Clause prohibits the government from 'deny[ing] a benefit to a

person because he exercises a constitutional right' or 'coercing people into giving [those rights] up'

by imposing unconstitutional conditions on the use of private land, the 'predicate for any

unconstitutional conditions claim is that the government could not have constitutionally ordered the

person asserting the claim to do what it attempted to pressure that person into doing.'" *Ballinger v.*

*City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022), cert. denied sub nom. *Ballinger v. City of*

*Oakland, California*, 142 S. Ct. 2777 (2022) (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570

U.S. 595, 604 and 612 (2013)). Plaintiffs assert neither ground here.

Plaintiffs assert the County denied them permits to further develop properties subject to

pending enforcement actions. They argue the County uses this as leverage to induce owners to settle

administrative proceedings. But there is no right to maintain illegal construction. E.g., *Sweeney*, 61

Cal.App.5th 1093. Plaintiffs do not allege the County would withhold permits once sites comply

with local law. If the claim is as-applied — that the construction to be removed was, in fact, lawful

— the County's appeal process allows a forum to prove it. No Plaintiff has attempted it.

#### 2.     The Regulations Substantially Further the County's Purpose

So long as government offers a landowner at least one alternative to satisfy requirements that

have an essential nexus and rough proportionality to the impacts of a proposed development, the

landowner has not been subjected to an unconstitutional condition. *Koontz v. St. Johns River Water*

*Mgmt. Dist.*, 570 U.S. 595, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013). An essential nexus must exist

between legitimate state interest and permit condition exacted by city. *Dolan v. City of Tigard*, 512

U.S. 374 (1994). Courts look at the degree of exactions to determine whether proposed development

was related both in nature and extent to impact. *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct.

2309, 129 L. Ed. 2d 304 (1994). Conditioning a land use permit is lawful if condition substantially

furthers governmental purposes that justify denial of permit. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987). Here, there can be no question that government has a property purpose to induce compliance with law. Nor is there anything disproportionate about requiring a property owner to bring the very site of a proposed new permit into compliance with law as a condition of enjoying the new rights.

HCC § 352-6 states "Category 4 Violations that are committed intentionally or through inexcusable neglect and have a significant and/or substantial impact on the health, safety, comfort and/or general welfare of the public. Category 4 Violations shall include, but not be limited to, the commercial cultivation of cannabis in Violation of any applicable local or state laws, regulations, policies, procedures, permits and agreements and any violation of building, health and safety, or zoning requirements that exists as a result of or to facilitate the illegal cultivation of cannabis."

The County allows Plaintiffs either to obtain permits to cultivate cannabis or to remove the means to do so unlawfully. Unpermitted cannabis cultivation is illegal and enforcing cannabis laws has essential nexus to health and safety; permits for property which maintains unlawful conditions could exacerbate those conditions, furthering harm to the public. One property here has an unpermitted tunnel under a building used for human occupancy. Another has an unpermitted pond, which risks erosion and water quality degradation. Accordingly, requiring Plaintiffs to remediate these conditions or prove them lawful before new permits issue is not unlawful. This reflects basic principles of our legal system. E.g., Cal. Civil Code, §§ 3514 ("One must so use his own rights as not to infringe upon the rights of another."); 3517 ("No one can take advantage of his own wrong."); 3521 ("He who takes the benefit must bear the burden.").

## V.    CONCLUSION

Plaintiffs lack standing and sue prematurely without exhausting administrative remedies, a requirement which defeats nearly all Plaintiffs' claims — procedural due process, substantive due process, and excessive fines. The Individual Defendants are immune to their claims.

Substantively, the County's processes comport with due process and no jury right applies to administrative hearings. No conduct here reaches the  high bar to establish a substantive due process claim. No large fine has been finally imposed here and the large fines possible under the County's ordinances for persistent refusal to bring property into compliance with law cannot be adjudged

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

excessive on their face, but only as applied and many cases uphold even larger fines for willful refusal to comply with land use laws. The unconstitutional exaction claim shows no exaction at all for requiring one to maintain his property in compliance with law exacts nothing. Moreover, the conduct allegedly coerced is that the County can command — again, compliance with local law.

Accordingly, the County asks this Court to dismiss Plaintiffs' Class Action Complaint in its entirety. No leave to amend need be granted because Plaintiffs cannot overcome the procedural and substantive bars to their claims noted here.

DATED:  November 23, 2022

COLANTUONO, HIGHSMITH & WHATLEY, PC


PAMELA K. GRAHAM
JOHN A. ABACI
VERNETRA L. GAVIN
Attorneys for Defendants
COUNTY OF HUMBOLDT, HUMBOLDT
COUNTY BOARD OF SUPERVISORS,
HUMBOLDT COUNTY PLANNING AND
BUILDING DEPARTMENT, VIRGINIA BASS,
MIKE WILSON, REX BOHN, MICHELLE
BUSHNELL, AND JOHN H. FORD

Colantuono, Highsmith & Whatley, PC
670 W. NAPA STREET, SUITE F
SONOMA, CA 95476

295629.v7