MICHAEL G. COLANTUONO, State Bar No. 143551
MColantuono@chwlaw.us
PAMELA K. GRAHAM, State Bar No. 216309
PGraham@chwlaw.us
JOHN A. ABACI, State Bar No. 166493
JAbaci@chwlaw.us
**COLANTUONO, HIGHSMITH & WHATLEY, PC**
670 West Napa Street, Ste. F
Sonoma, CA 95476-6483
Telephone: (707) 996-9690
Facsimile: (707) 996-9603

Attorneys for Defendants
**COUNTY OF HUMBOLDT, HUMBOLDT COUNTY
BOARD OF SUPERVISORS, HUMBOLDT COUNTY
PLANNING AND BUILDING DEPARTMENT,
VIRGINIA BASS, MIKE WILSON, REX BOHN,
MICHELLE BUSHNELL, AND JOHN H. FORD**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVISION

| | |
|---|---|
| CORRINE MORGAN THOMAS and DOUG THOMAS, a married couple; BLU GRAHAM; RHONDA OLSON, and CYRO GLAD, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF HUMBOLDT, CALIFORNIA; HUMBOLDT COUNTY BOARD OF SUPERVISORS; HUMBOLDT COUNTY PLANNING AND BUILDING DEPARTMENT; STEVE MADRONE, REX BOHN, MIKE WILSON, MICHELLE BUSHNELL, NATALIE ARROYO, in their official capacity as Supervisors of Humboldt County; and JOHN H. FORD in his official capacity as Planning and Building Director,<br><br>Defendants. | Case No.: 1:22-cv-05725-RMI<br><br>Assigned to the Magistrate Judge Robert M. Illman<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**FED R. CIV. P. 12(b)(1) and (6)**<br><br>[Proposed] Order ISO Motion to Dismiss; Declaration of Pamela K. Graham; Request for Judicial Notice; [Proposed] Order ISO Request for Judicial Notice, filed concurrently herewith]<br><br>Date:   April 18, 2023<br>Time:  11:00 a.m.<br>Ctrm:  Eureka Courthouse<br><br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on April 18, 2023 at 11:00 a.m. or as soon thereafter as the matter may be heard, Defendants will, and do, move this Court for an order dismissing the Amended Complaint ("Complaint") in its entirety under Federal Rules of Civil Procedure 12(b)(1) and (6). Alternatively, the City Defendants seek an order under Rule 12(b)(6) dismissing every claim on the grounds discussed in this Motion.

The Complaint should be entirely dismissed because it does not establish standing as to any Plaintiff. It does not plead injury in fact traceable to the challenged actions or that any injury can be redressed here. Alternatively, the County moves to dismiss Counts One through Five for failure to state a claim for these reasons:

- The Complaint is time-barred by the 2-year statutory period to file a claim under 42 U.S.C. section 1983 ("Section 1983");

- The Complaint fails to plead a claim upon which relief may be granted;

- Plaintiffs redundantly and improperly sue individuals in their official capacities; and

- Individual Defendants are subject to legislative and qualified immunities.

Because the Plaintiffs have already had two opportunities to plead a sufficient claim against the Defendants and the Complaint's procedural deficiencies make amendment futile, the County seeks dismissal without leave to amend.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, Declaration of Pamela K. Graham; the concurrently filed Request for Judicial Notice; the pleadings, records, and files in this action; and such other oral and documentary evidence as may be presented at or before the hearing.

DATED:  March 3, 2023

COLANTUONO, HIGHSMITH & WHATLEY, PC

MICHAEL G. COLANTUONO
PAMELA K. GRAHAM
JOHN A. ABACI
Attorneys for Defendants
COUNTY OF HUMBOLDT, HUMBOLDT
COUNTY BOARD OF SUPERVISORS,
HUMBOLDT COUNTY PLANNING AND
BUILDING DEPARTMENT, STEVE MADRONE,
REX BOHN, MIKE WILSON, MICHELLE
BUSHNELL, AND JOHN H. FORD

**Colantuono, Highsmith & Whatley, PC**
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .................................................................................................3

TABLE OF AUTHORITIES ...........................................................................................4

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................9

II.    FACTUAL AND PROCEDURAL BACKGROUND .........................................9

    A.    Corrine and Doug Thomas Agree to Resolve Their Code Violations...................11

    B.    Blu Graham Resolves His Code Violations ...............................13

    C.    Efforts to Resolve Rhonda Olson's Code Violations Continue ...............15

    D.    Glad's Violations Continue, Delaying Resolution of His Case ..............16

III.    THE CLAIMS ARE PROCEDURALLY IMPROPER ...................................17

    A.    All Plaintiffs Lack Standing....................................17

    B.    Plaintiffs' Due Process Claims Are Not Ripe .............................18

    C.    Plaintiffs' Claims Are Time-Barred ....................................19

    D.    Defendants Are Immune ........................................19

    E.    Plaintiffs Redundantly and Improperly Sue County Employees ...................20

IV.    ALL CLAIMS FAIL SUBSTANTIVELY .......................................21

    A.    Plausible Allegations of Fact, Not Speculation, Are Required ..................21

    B.    The Procedural Due Process Claim Fails .................................21

        1.    The County Gave Adequate Notice and Opportunity for Hearing ...........21

        2.    Plaintiffs Do Not Allege Improper Delay .................................23

        3.    Plaintiffs Do Not Allege Deprivation of a Protected Property Interest in Permits or Administrative Citation Proceedings....................24

    C.    The Substantive Due Process Claim Also Fails................................26

        1.    Substantive Due Process Applies But Rarely ...........................26

        2.    The Complaint Does Not Allege Egregious Conduct ..............................26

        3.    Plaintiffs Cannot Show County Code Enforcement Lacks a Rational Relationship to a Government Interest ......................................28

    D.    The Excessive Fines Claim Fails, Too .....................................28

    E.    The Alleged Exactions Are Constitutional.................................30

        1.    Conditioning Land Use Approvals on Code Compliance is Lawful..........30

        2.    The Regulations Substantially Further the County's Purposes.................30

        3.    Compliance Agreements Are Constitutional................................31

    F.    There is No Jury Right in Administrative Hearings..............................32

V.    CONCLUSION....................................................................32

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acosta v. City of Costa Mesa*,
  718 F.3d 800 (9th Cir. 2013) ................................................19

*Action Apartment Ass'n v. Santa Monica Rent Control Bd.*,
  509 F.3d 1020 (9th Cir. 2007) ................................................19

*Aiona v. Judiciary of State of Hawaii*,
  17 F.3d 1244 (9th Cir. 1994) ................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................21

*Assoc. Gen. Contractors of Calif. v. Calif. State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................21

*Ballinger v. City of Oakland*,
  24 F.4th 1287 (9th Cir. 2022) ................................................30

*Ballinger v. City of Oakland*,
  142 S. Ct. 2777 (2022) ................................................30

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................21

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998) ................................................19

*Brandon v. Holt*,
  469 U.S. 464 (1985) ................................................20

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
  149 F.3d 971 (9th Cir. 1998) ................................................22

*Cinevision Corp. v. City of Burbank*,
  745 F.2d 560 (9th Cir. 1984) ................................................20

*Circu v. Gonzales*,
  450 F.3d 990 (9th Cir. 2006) ................................................22

*Cleveland Bd. Of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ................................................22

*Club Moulin Rouge LLC v. City of Huntington Beach*,
  No. CV04-10546SVWRNBX, 2005 WL 5517234 (C.D. Cal. June 22, 2005) ................................................22

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998)..................................................................26

*Dolan v. City of Tigard*,
   512 U.S. 374 (1994)..................................................................30

*Emmert Industrial Corp. v. City of Milwaukie, Or.*,
   307 F.Appx. 65 (9th Cir. 2009) ................................................31

*Fitzgerald v. State*,
   1997 WL 579193, Case No. Civ 96-2077-PMX-SMM (D. Ariz. July 9, 1997).....................23

*Giuliani v. Springfield Twp.*,
   238 F. Supp. 3d 670 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018) ................22, 26

*Gonzales v. Raich*,
   545 U.S. 1 (2005)....................................................................26

*Graham v. Connor*,
   490 U.S. 386 (1989)..................................................................26

*Guatay Christian Fellowship v. County of San Mateo*,
   670 F.3d 957 (9th Cir. 2011) .......................................18, 24, 25

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)..................................................................19

*Highway Materials, Inc. v. Whitemarsh Twp. ("Highway Materials")*,
   386 F. App'x 251 (3d Cir. 2010) ..............................................27

*Kennerly v. United States*,
   721 F.2d 1252 (9th Cir. 1983) ...............................................22, 32

*Kentucky v. Graham*,
   473 U.S. 159 (1985)..................................................................20

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013)..................................................................30

*Kuzinich v. County of Santa Clara*,
   689 F.2d 1345 (9th Cir. 1982) .................................................20

*Louisiana Pacific Corp. v. Beazer Materials & Services Inc.*,
   842 F.Supp. 1243 (E.D. Cal. 1994)...........................................31

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................17

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)..............................................................22, 23

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...........................................................16

*Metroflex Oceanside, LLC v. Newsom*,
   532 F.Supp.3d 976 (S.D. Cal. 2021) .................................................26

*Monell v. New York City Dept. of Social Services*,
   436 U.S. 658 (1978) .........................................................................20

*N. Pacifica LLC v. City of Pacifica*,
   526 F.3d 478 (9th Cir. 2008) ...........................................................28

*Nollan v. California Coastal Comm'n*,
   483 U.S. 825 (1987) .........................................................................30

*Pimentel v. City of Los Angeles*,
   974 F.3d 917 (9th Cir. 2020) ...........................................................28

*S.E.C. v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ...........................................................21

*Sabri Properties, LLC v. City of Minneapolis*,
   No. 18-CV-3098 (MJD/HB), 2019 WL 1559475 (D. Minn. Mar. 6, 2019) .........32

*Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Child. & Fam. Servs.*,
   974 F.3d 1012 (9th Cir. 2020) ...........................................................19

*Shanks v. Dressel*,
   540 F.3d 1082 (9th Cir. 2008) ......................................................26, 27

*Smith v. County of Santa Cruz*,
   2020 WL 6318705, Case No. 20-cv-00647-BLF (N.D. Cal. Oct. 28, 2020) .........18

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ...........................................................21

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,
   163 F.Supp.3d 755 (C.D. Cal. 2015) .................................................10

*Thornton v. City of St. Helens*,
   425 F.3d 1158 (9th Cir. 2005) ...........................................................25

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .....................................................................17

*U.S. v. Amalfi*,
   47 F.4th 114 (2d Cir. 2022) .............................................................28

*U.S. v. Bajakajian*,
   524 U.S. 321 (1998) .........................................................................28

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

*U.S. v. Palma,*
7 Fed. Appx. 748 (9th Cir. 2001) ........................................................................24

*U.S. v. Streich,*
560 F.3d 926 (9th Cir. 2009) ..............................................................................17

*United States v. Antoine,*
906 F.2d 1379 (9th Cir. 1990) ........................................................................23, 28

*Valley Forge Christian College v. Americans United for Separation of Church &*
*State, Inc.,*
454 U.S. 464 (1982) ............................................................................................17

**State Cases**

*Breneric Assocs. v. City of Del Mar,*
69 Cal.App.4th 166 (1998) .................................................................................24

*City and County of San Francisco v. Sainez,*
77 Cal.App.4th 1302 (2000) ...............................................................................29

*Clark v. Hermosa Beach,*
48 Cal.App.4th 1152 (1996) ...............................................................................25

*Contasti v. City of Solana Beach,*
2013 WL 5727409 at *9, No. 09CV1371 WQH (BLM) (S.D. Cal. Oct. 22, 2013) ..............24

*Erlach v. Sierra Asset Servicing LLC,*
226 Cal.App.4th 1281 (2014) ..............................................................................28

*Lent v. California Coastal Com.,*
62 Cal.App.5th 812 (2021) .................................................................................29

*Maral v. City of Live Oak,*
221 Cal. App. 4th 975 (2013) .............................................................................26

*People v. Braum,*
49 Cal.App.5th 342 (2020) .................................................................................28

*Sweeney v. California Regional Water Quality Control Bd.,*
61 Cal.App.5th 1093 (2021) ...........................................................................29, 30

**California Constitutions**

Cal. Const., Article XI, § 7 ............................................................................120, 26

**Federal Statutes**

42 U.S.C.
§ 1983 ........................................................................................................ *passim*

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

**State Statutes**

Cal. Civil Code, § 3514......................................................................................31

Cal. Gov. Code, 65000 et seq. ...........................................................................20

Cal. Gov. Code § 53069.4.......................................................................10, 11, 18

**Rules**

Fed. R. Civ. Proc. 8(a)(2).....................................................................................21

Rule 12(b)(1)....................................................................................................2, 17

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

302483.v3

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The County of Humboldt adopted a program to enforce local laws as to cannabis cultivation. It uses drones to do so given the County's large area and low population-density. Remedies for illegal cultivation and for illegal structures include fines. The County notifies property owners of apparent violations and offers administrative hearings to determine whether a violation exists on request. Plaintiffs each received a Notice of Code Enforcement Appeal Hearing and Notice of Administrative Civil Penalty Appeal Hearing. Plaintiffs allege violation of their constitutional rights by hearing delays during the pandemic, denial of a jury right inapplicable to administrative hearings, and excessive fines.

The Complaint is fraught with procedural and substantive deficiencies. No Plaintiff has standing, as the injuries alleged are speculative and hypothetical. Plaintiffs failed to exhaust administrative remedies before suing in due process. Plaintiffs' claims are barred by the 2-year statute of limitations applicable to Section 1983 claims. Plaintiffs have not asserted a constitutionally protected property interest to support their substantive and procedural due process claims. Too, the unconstitutional exactions claim does not show the County seeks to compel conduct which it lacks police power to require. The Individual Defendants have legislative and qualified immunities. Finally, Plaintiffs redundantly sue both the County and its officials in their official capacities. The amended Complaint should be dismissed without leave to amend.[1]

# II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Corrine Morgan Thomas and Doug Thomas, Blu Graham, Rhonda Olson, and Cyro Glad allege a class action against Humboldt County, its Board of Supervisors, and its Planning and Building Department under Section 1983, asserting: violation of their Fourteenth Amendment (1) procedural and (2) substantive due process rights; (3) violation of the prohibition against unconstitutional exactions; (4) violation of the prohibition against excessive fines; and (5) denial of a jury right. They challenge the County's efforts to redress their violations of building, land use, and cannabis laws. The allegations are vague, conclusory, and inadequate to state any justiciable claim.

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

---

[1] Defendants moved to dismiss the original complaint, then stipulated to additional time for Plaintiffs to file this amended pleading. (Doc 30)

1   The whole story — which this Court may consider via judicially noticeable public documents (*Spy*

2   *Optic, Inc. v. Alibaba.Com, Inc.*, 163 F.Supp.3d 755, 762 (C.D. Cal. 2015)) — reflects appropriate

3   and timely administrative efforts to cure Plaintiffs' violations. The appropriate forum for any

4   challenge is in those local proceedings. Plaintiffs' claims are both premature and meritless.

5   The administrative fines chapter of the Humboldt County Code ("HCC") details an adequate

6   process to enforce local laws and to impose fines. It has these goals: (1) to protect the public health,

7   safety, and welfare; (2) to provide "objective criteria for the imposition of penalties and provide for a

8   process to appeal the imposition" of penalties; (3) to provide means to punish violations; and (4) to

9   minimize the expense and delay associated with pursuing alternative remedies in court. HCC § 352-

10  2; Request For Judicial Notice ("RJN"), Exh. NN [HCC § 352].[2]

11  When the County learns of a violation, it issues a "Notice of Violation and Proposed

12  Administrative Civil Penalty." HCC § 352-7. The Notice must state the "name and last known

13  address of each responsible party," such as the owner or occupant of land. HCC § 352-8(a). It

14  informs the cited party of Chapter 2's procedures, including an opportunity to contest a violation

15  and/or a proposed penalty. HCC §§ 352-8(g), 352-9. Upon a request for an appeal, the County

16  notifies each responsible party that a hearing officer appointed by the County Board of Supervisors

17  will hear the appeal after further notice. HCC § 352-8(j), 352-9. Notices also state a penalty is not

18  final until 20 days after service of decision on any appeal, if judicial review is not sought pursuant to

19  California Government Code § 53069.4. HCC §§ 352-8(l)(ii), 352-12. If judicial review is sought, a

20  fine is final 10 days after the Superior Court's determination. HCC §§ 352-8(l)(iii), 352-13. The

21  Notice also states a final penalty may become a lien against the property. HCC §§ 352-8(m), 352-

22  16(l). Finally, the Notice states an additional Notice of Violation can be served if a new violation

23  occurs or the existing violation continues 90 days after a penalty is imposed. HCC §§ 352-8(n), 352-

24  5(d). Penalties for illicit cannabis cultivation — a widespread problem in the County — commence

25  with service of a "Notice of Violation and Proposed Administrative Civil Penalty," and are also

26  subject to judicial review. HCC §§352-3(m), 352-5(b)(2), 352-13.

27

28

---

[2] The entirety of Humboldt County Code section 352 can be found at RJN, Exhibit NN.

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

Chapter 2 details potential penalties. Any violation may incur up to $10,000 per day through the 90th day a violation is maintained. HCC §352-5(a). Factors which govern penalty amounts include the severity of a violation, the number of complaints received, the willfulness and/or negligence of the responsible party, whether she took reasonable steps to prevent a violation, had actual or constructive knowledge of a violation's impacts, her degree of sophistication, prior violations, County staff time incurred, and her efforts to remediate the impacts of her misconduct. HCC § 352-6(a), (b). Fine "Categories 1 through 4" reflect degrees of willfulness and severity of violations. HCC § 352-6(b). A hearing officer may find no violation exists or may suspend or reduce a fine under these criteria or upon finding a responsible party promptly remedied a violation. HCC § 352-12(a), (b).

A hearing officer's decision is subject to judicial review under California Government Code § 53069.4. HCC § 352-13. Instructions for seeking such review accompany a hearing officer's ruling. HCC § 352-12(c). "[J]urisdiction to collect the final administrative civil penalty" and administrative costs and fees flows from a Notice of Violation and Proposed Administrative Penalty not reversed by a hearing officer or the Superior Court. HCC § 352-14(a). Absent a completed administrative proceeding, County staff may not collect penalties. *Ibid.* Its Planning Director can reduce or eliminate administrative costs, fees, and penalties and may make a "compliance agreement" with a responsible party to reduce or eliminate those charges to induce voluntary compliance. HCC § 352-14(c).

Plaintiffs claim this process is unconstitutional because fines may be high, delays can occur, the County appoints the hearing officer and charges fees to cover appeal processing (akin to court filing fees), and the County does not grant new land use entitlements to those who persist in Code violations. (E.g., Compl. ¶¶ 38–54, 135–148, 213–237, and 483). None of these sustains a claim.

## A.    Corrine and Doug Thomas Agree to Resolve Their Code Violations

In mid-2021, satellite imagery and a realtors' listing revealed a metal building with a reflective roof used to grow cannabis at a home in Miranda (274 Lower Cathey Ln., APN 211-391-011-000). (RJN, Exh. A; Compl. ¶ 276.) The realtor's photographs showed multiple building vents

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

and cloning trays leaning against it. (RJN, Exh. A.) The Thomases acquired this property from Summerville Creek LLC in August 2021. (RJN, Exh. B; Compl. ¶¶ 264 and 268.)

The County served notices of violation ("NOV") and to abate ("NTA") in August 2021 citing: (1) an "unpermitted commercial cannabis operation with approximately 2,500 square feet of cultivation" and (2) a "structure facilitating commercial cannabis activity and constructed contrary to the provisions of the Humboldt County Code." (RJN, Exhs. C–F.) The NOV notified the owners of possible penalties and the NTA told them how to remedy the violations. (RJN, Exhs. C & D.) Each of these is a category 4 violation, with a proposed penalty of $6,000. (*Id.*) The notices named Sommerville Creek as the "responsible party," giving it 10 days to correct the violations or to be subject to a daily administrative penalty of $12,000 (for 2 violations) for up to 90 days under HCC § 352-5. (Exh. C, p. 5.) The NOV provided the information the ordinance requires, detailed *supra*.

Abatement required responsible parties to: (i) cease cannabis cultivation and remove all cannabis and infrastructure to grow it, including that for power and irrigation; and (ii) remove all structures connected to cannabis cultivation constructed in violation of local law including applying for and obtaining any necessary demolition permit. (RJN, Exh. D.) Inspector Brian Bowes signed the NOV and NTA and posted them on the property. (RJN, Exhs. C & D.)

With the Thomases' consent and their attorney present, the County inspected the site in September, confirming the greenhouse had been used to cultivate cannabis. (RJN, Exhs. G & H.) The Thomases did not wish to demolish it; the County inspector explained the County's then-policy requiring its removal. (RJN, Exh. K [3/22/22 memo to Board of Supervisors on removal of illicit structures].) Although the County never designated the Thomases as responsible parties, they appealed. (RJN, Exh. I.) They did nothing to abate the nuisances over the next year.

In November 2021, the County and Thomases reached a Compliance Agreement to resolve the violation, which required them to demolish the greenhouse. The Thomases agreed to obtain a demolition permit and to remove the greenhouse within six months. (RJN, Exh. J [Nov. 12, 2021 Compliance Agreement, Recitals, ¶ 2.A.].) The County agreed to stay enforcement, collection actions, and service of an NOV and NTA naming the Thomases. (*Ibid.*) Upon the Thomases's performance, the County would dismiss the case. (*Id.*, ¶ 3.B.) If not, the County could serve a NOV

and NTA naming the Thomases. (*Id.*, ¶ 2.E.) While the Thomases applied for a demolition permit, they never picked it up, and have yet to demolish the illicit greenhouse although the agreement's six-month term has run.

In March 2022, with the Compliance Agreement in effect, the County advised the Thomases of a new policy (DPS-22-04) offering property owners a path to permit illicit cannabis structures, avoiding demolition, by providing a restoration plan describing a non-cannabis use for a structure. (RJN, Exh. K.) In April 2022, the Thomases' attorney notified the County of their desire to benefit from this new policy. (RJN, Exh. MM [Email from ED to CEU 4/1/22 Re: Buildings of my clients].) The policy allows up to one year to seek necessary permits. While the Thomases claim that they have been told that permits will not be issued while enforcement proceedings are pending as to the property, they do not allege they applied for a permit or that the County denied that application. Specifically, they have yet to apply for a permit to retain the illicit greenhouse, although they have submitted a restoration plan. The County has not named the Thomases in an NOV or fined them.

### B.     Blu Graham Resolves His Code Violations

On May 10, 2018, the CEU served a NOV and NTA to Jesica Modic and Blu Graham for three cannabis violations on their property at 2899 Chemise Mountain Road, Shelter Cove (APN 108-281-002-000). (RJN, Exhs. L, M & N.) These were for:

(1) unpermitted grading (HCC § 331-14, RJN Exh. X), including significant clearing exposing bare earth (risking erosion) and creating an unpermitted 2,500-square-foot pond;

(2) construction in violation of building, plumbing and/or electrical codes (*Id.* § 331-28), specifically four unpermitted structures the County found consistent with the visual profile of greenhouses or "hoop houses" commonly used to grow cannabis; and

(3) violation of the County's commercial cannabis ordinance (*Id.* § 314-55.4, RJN Exh. F).

The County established the violations using satellite data, as well as the Planning and Building Department's and other agencies' permit records. (RJN, Exh. O [summary of code enforcement case].) The County chose this area for satellite analysis given the prevalence of cannabis cultivation there as evidenced in County records of cannabis cultivation registrations and by earlier commercial cultivation there. (*Id.*) The NOV cited a daily administrative penalty of

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

1   $10,000 for up to 90 calendar days for these violations. (RJN, Exh. L.) The notices detailed

2   Graham's appeal and hearing rights as the ordinances described above require. The County sought

3   abatement, including permits for a restoration plan to correct the grading violations and construction

4   issues, ceasing cannabis cultivation, and removing cultivation infrastructure. (RJN, Exh. M.)

5   Graham abated two violations by showing no current cultivation and removing the unpermitted

6   hoophouses. (RJN, Exh. O.) In 2018, Graham and his attorney contacted the County about obtaining

7   a grading permit and a permit for his greenhouses, but the amended Complaint does not allege that

8   either applied for permits to date or that the County has denied such applications. (Compl. ¶¶ 359–

9   365.)

10       In 2021, the County offered a compliance and no penalty agreement proposing remedial

11  grading and filling the pond; Graham did not agree. (RJN, Exh. P [unsigned compliance

12  agreement].) Instead, he appealed the NOV. (RJN, Exh. R.) In July 2022, he requested information

13  on impacts of his code violations on a Safe Home application, saying he wished to keep the pond for

14  firefighting. (RJN, Exh. R.) The Safe Home program allows property owners to apply for permits to

15  retain unpermitted residential structures and additions without penalty by complying with local laws.

16  (RJN, Exh. OO [Safe Home program packet].)  He provided an engineer's re-grading proposal.

17  (RJN, Exh. Q.) The County advised he needed pond and grading permits and placed his Safe Home

18  application on hold pending compliance. (RJN, Exh. R.)

19       In September 2022, the County mailed and posted on the property an October 14 Notice of

20  Administrative Civil Penalty Appeal Hearing. (RJN, Exh. S.) While the NOV cited $10,000 per day

21  fines, the County reduced it to $1,000 daily as Graham had abated two violations, including the

22  Category 4 cannabis violation. (RJN, Exhs. O & T.) Graham's attorney recommended these terms in

23  a voicemail message proposing amendments to the County's proposed compliance agreement.

24       Later that month, Graham visited the Planning and Building Department (without his

25  attorney), seeking to resolve the remaining violation. Graham agreed with Planning and Building

26  Director John Ford that Graham would (i) apply for a grading permit for the pond, and (ii) pay

27  administrative costs. (RJN, Exh. U.) The County issued Graham his grading permit that same day,

28  billing him $3,474.10 in costs. (RJN, Exh. V.) Ford confirmed these terms by email, and Graham

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**Colantuono, Highsmith & Whatley, PC**
670 West Napa Street, Suite F
Sonoma, California 95476-6483

responded a few hours later accepting them, promising to drop off a check. (RJN, Exh. U.)
Accordingly, the County cancelled the appeal hearing. The County refunded Graham $2,951.18 in
hearing preparation and noticing costs, asking him to pay just $523 for permit applications. (RJN,
Exh. V [settlement packet].) The County issued Graham's grading permit in early October 3. (RJN,
Exh. W.) This NOV is resolved.

### C. Efforts to Resolve Rhonda Olson's Code Violations Continue

In April 2018, the County issued an NOV to Paul Zaccardo for unpermitted cannabis
cultivation and unpermitted structures on APN 529-171-033 (1133 Red Cap Road) in Orleans. (RJN,
Exh. Z.) In August 2020, the County Sheriff's office executed search warrants on 1133 Red Cap
Road on two neighboring properties (APN 529-171-034-000 [1221 Red Cap Road], and 529-171-
040-000 [1087 Red Cap Road]). (RJN, Exh. AA [inspection report].) The three parcels are adjacent
and found on execution of the search warrants to be part of one cannabis cultivation operation. (Exh.
AA, p. 3.) Olson purchased 1133 Red Cap Road and two other nearby properties in September 2020
— all with active code enforcement cases. (Compl., ¶¶ 410, 413 & 432.) These are 1030 (APN 529-
181-036) and 1030A (APN 529-181-038) Red Cap Road. (Exhs. PP, QQ.) That same month, the
County issued an NOV to "Lb 4 Lb Corporation" as responsible for violations at 1030 Red Cap
Road) and to "Paul Zaccardo" as responsible for violations at 1133 Red Cap Road. (RJN, Exhs. BB,
CC.) Two parcels required a grading assessment and plan to correct an unpermitted tunnel under an
industrial building. Additionally, the County cited unpermitted cannabis cultivation and greenhouses,
solid waste and a junk vehicle on the property, and unpermitted grading. (*Id.*) It issued no NOV
naming Olson as responsible for violations at either 1030 or 1133 Red Cap Road.

Soon thereafter, Olson asked the County about the violations, learning corrective actions
were needed on all the parcels. (RJN, Exh. DD.) The County allowed her time to abate before
serving any notices on her. (*Ibid.*) Days later, Olson's consultant submitted an Initial Plan for
Restoration, asking for more time to comply. (RJN, Exh. EE.) Olson has taken no further abatement
action to date, and months later in March 2021, her new consultant again discussed remedial grading
with the County. (RJN, Exh. DD.) Another year passed without action by Olson.

In April 2022, the County served a new NOV and NTA naming Olson, identifying continuing

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

1   violations and needed corrections. (RJN, Exhs. FF & JJ.) The NOV cites four violations on APN

2   529-171-033 (1133 Red Cap Road) for daily fines of $1,000 (for one violation) and $10,000 (for the

3   other three) up to 90 days after a 10-day period to abate the nuisances. (Exh. FF.) Only this NOV

4   names Olson as a responsible party. (RJN, Exhs. FF, BB & CC [3 NOVs].) Olson timely appealed.

5   (RJN, Exh. GG.)

6          In May 2022, yet a third consultant submitted a remediation plan. (RJN, Exh. HH.) The

7   County approved it for APN 529-181-038 (1030A Red Cap Road), but as to the other properties, it

8   required removal of a cannabis structure and infrastructure and solid waste and filling 45 holes on

9   APN 529-171-033 (1133 Red Cap Road), and permits for a 10,000 square-foot graded area and for

10  an accessory building connected to cannabis cultivation, as well as removing remaining cultivation

11  refuse and infrastructure from APN 529-181-036 (1030 Red Cap Road). (RJN, Exh. II.) Olson

12  agreed to comply, but the April 2022 NOV remains open. The County remains hopeful of resolution.

13         **D.      Glad's Violations Continue, Delaying Resolution of His Case**

14         On September 1, 2018, Cyro Glad bought a 40-acre parcel (APN 218-041-006-000, or 755

15  Road H, New Harris, CA). (Compl. ¶¶ 465 & 463; RJN Exh. RR.) The County used satellite images

16  to identify Code violations there. (RJN, Exh. SS.) On November 2, 2018, the County served Glad a

17  NOV and a NTA, by first class, certified mail at P.O. Box 1801, Redway, CA 95560. (RJN, Exh. TT.)

18  The NOV cites four violations: (1) unpermitted grading (HCC § 331-14); (2) construction in

19  violation of building, plumbing and/or electrical codes (§ 331-28); (3) violation of the commercial

20  cannabis land use ordinance (§ 314-55.4); and (4) development within a streamside management

21  area (§ 314-61.1). (RJN, Exhs. TT, X, F, & UU; Compl. ¶ 469.)

22         The NOV proposed a civil penalty of $10,000 per day for up to 90 days, after a 10-day period

23  to abate the nuisances. Another NOV and penalty could be imposed if the violation exists after the

24  90-day period. (RJN, Exh. TT.) If Glad needed more than 10 days to correct the violations, the

25  County offered a Compliance Agreement to allow more time. (*Id.*) The notices detailed Glad's

26  appeal and hearing rights as the ordinances described above require. (*Id.*)

27         Glad received the notices and sent two requests for an administrative hearing on November

28  16, 2018, admitting "all nuisance[s] are in the process of being removed, cleaned, and [brought up]

302483.v3

to County Code standards." (RJN, Exh. VV; Compl. ¶¶ 468, 475–76.) Glad listed on his hearing requests the address at which the County had served him with the notices. (RJN, Exhs. TT & VV.) Glad alleges he sent a letter to Director Ford in February 2019 and "never received a response." (Compl. ¶¶ 478–480.) However, the County sent Glad a May 6, 2021 letter asking whether he wanted to continue with the hearing or enter into a Compliance Agreement, asking him to notify the County of his intentions within 10 days. (RJN, Exh. WW.) Glad's inaction caused subsequent delay.

## III. THE CLAIMS ARE PROCEDURALLY IMPROPER

### A. All Plaintiffs Lack Standing

Plaintiffs lack Article III standing. A standing challenge is appropriately raised under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To satisfy Article III's case or controversy requirement, a plaintiff must show he has suffered an injury in fact, traceable to the challenged action, which a favorable decision can redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Injury must be "concrete, imminent and particularized." *Id.* And a claim must affect a plaintiff's own rights or interests, not those of others. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75 (1982) (courts do not adjudicate "abstract questions of wide public significance" amounting to "generalized grievances"). In a suit for damages, the mere risk of future harm, standing alone, is not a concrete harm establishing Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). A claim is not "ripe" if it involves future events that may not occur as anticipated, or at all. *U.S. v. Streich*, 560 F.3d 926 (9th Cir. 2009).

Plaintiffs allege no injury in fact. Graham received his grading permit and paid only $523 in permit fees; he is no longer assessed fines. The County resolved his case and refunded all fees (other than permit fees). He owes no penalties. (RJN, Exhs. U, V, W.)

The NOVs the Thomases appealed do not name them. (RJN, Exhs. C, D, I.) They reached a Compliance Agreement and, as a result, the County issued no NOVs in their names. (RJN, Exh. J.) It is speculative that they will ever pay a penalty — they are seeking to resolve the violations under a new policy allowing them to maintain an unpermitted structure for non-cannabis uses. (RJN, Exh. K [Department Policy Statement 22-04].) Their case is hypothetical.

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

302483.v3

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

1    Olson appealed an April 2022 NOV naming her as the responsible party. (RJN, Exh. GG.)

2    But her engineer has since contacted the County to resolve the violations. (RJN, Exhs. HH, II.) She,

3    too, may never pay a fine. Her claims, too, are speculative.

4    Glad has paid no fees, and the County has imposed no fines on him. Administrative fines are

5    proposed but not imposed. (RJN, Exhs. TT, VV, WW.) Glad may resolve all violations as Graham

6    did and pay no fine or administrative fee. None of the Thomases, Olson or Glad paid any fine.

7    Possible future fines resulting from their delay in complying with local law is not injury in fact. Any

8    future harm is neither concrete nor imminent. Thus, Plaintiffs lack both injury in fact and standing

9    for their claims asserting unconstitutional fees and fines.

10    **B.      Plaintiffs' Due Process Claims Are Not Ripe**

11    Plaintiffs' claims that they have been denied permits are unripe until they apply for permits

12    and obtain a final decision on their applications. *Guatay Christian Fellowship v. County of San*

13    *Mateo*, 670 F.3d 957, 983 (9th Cir. 2011). Plaintiffs do not allege they applied for and were denied

14    permits. Rather they allege County employees told them that they would not be issued permits while

15    violations exist on their properties. (Compl. ¶¶ 9, 44, 214–17, 220, 395.) Plaintiffs must first make

16    formal application and obtain a final decision on it before they can have standing on this claim.

17    *Guatay*, 670 F.3d at 983 (church which failed to complete application process for use permit lacks

18    standing to sue county for refusing to permit church use of property). Plaintiffs also lack standing to

19    claim the NOVs and NTAs, "though strongly worded" and proposing penalties for noncompliance,

20    deprived them of property. *Id.* at 984 ("[A]lthough strongly worded, the County's NOV and cease-

21    and-desist order did not themselves deprive the Church of any interests. The County would have had

22    to bring an enforcement action in court in order to actually enforce the zoning regulations … .").

23    Such language does not deprive them of any rights until the County seeks an order to abate the

24    violations or imposes penalties, at which time Plaintiffs will be entitled to judicial review under

25    Government Code § 53069.4. *Id.*; see also *Smith v. County of Santa Cruz,* 2020 WL 6318705, Case

26    No. 20-cv-00647-BLF (N.D. Cal. Oct. 28, 2020) (plaintiff could not state due process claim for

27    administrative citation issued by County when it had not filed challenge with the superior court

28    under Gov't Code § 53069.4).

302483.v3

The statute of limitations for a Section 1983 claim in California is 2 years from accrual of the cause of action. *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) (substantive due process claim subject to 2-year statute). Such claims borrow the forum state's personal-injury statute of limitations. *Id.* Plaintiffs' claims that the County's procedures for NOVs and NTAs are unconstitutional are time-barred, as all issued more than 2 years before this action was filed on October 5, 2022. (RJN Exh. L (Graham NOV issued May 10, 2018); Exh. Z, BB, CC (Olson property NOVs issued to Zaccardo on April 18, 2018, to Lb 4 Lb Corporation on September 11, 2020, and to Zaccardo on September 30, 2020, respectively); Exh. TT (Glad NOV issued on November 2, 2018). These as applied challenges are thus time barred. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 822 (9th Cir. 2013) (distinguishing facial and as-applied challenges).

If Plaintiffs are asserting a facial challenge, the action would be entirely barred for claims as to County ordinances adopted in 2017 — 5 years before this suit. (Compl. ¶¶60-73; 570-580 [facial challenge to increased fines], 508(i), 570, 571, 576 [reduced time to correct before fined], 10, 49-50, 508(e), and 509 [hearings upon request and no maximum time to be held]; RJN, Exh. NN (§352-5(b)(2); § 352-6(a)(4); § 352-9; § 352-10(c)). See also *Action Apartment Ass'n* at 509 F. 3d at 1027 (facial substantive due process challenge accrues on enactment of ordinance).

D. **Defendants Are Immune**

Local officials are absolutely immune from a Section 1983 challenge to legislative acts. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity"). The immunity applies when policymakers make discretionary, policymaking decisions in a field in which legislators traditionally have power to act. *Id.* at 56. Officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020). A right is "clearly established" if every reasonable official would understand and have fair warning his conduct violated that right when he acted. *Id.* Qualified

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

302483.v3

**Colantuono, Highsmith & Whatley, PC**
670 West Napa Street, Suite F
Sonoma, California 95476-6483

immunity, too, protects officials acting in an executive capacity from Section 1983 claims concerning good faith actions within their authority. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 578 (9th Cir. 1984); see also *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir. 1982) (local legislature had absolute immunity for legislative act of enacting general zoning ordinance, and qualified immunity for its enforcement).

Plaintiffs challenge the County's Cannabis Code, legislation within the Defendants' authority. (Cal. Const., art. XI, § 7 [police power]; Cal. Gov. Code, 65000 et seq. [Planning & Zoning Law].) As they perform discretionary functions — such as enforcing laws and scheduling hearings in compliance with code — they are shielded from damages. Director Ford's discretionary actions enforced County permit laws. (Compl., ¶ 395.) Plaintiffs do not allege unreasonable conduct that violates their rights made unlawful by clearly established law. If they did, qualified immunity would protect the Individual Defendants. Thus, legislative, discretionary, and qualified immunity protect the Individual Defendants.

### E.    Plaintiffs Redundantly and Improperly Sue County Employees

Plaintiffs redundantly sue County Supervisors and the Planning and Building Director in their official capacities along with the County. Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978). Once a government receives notice and an opportunity to respond, an official-capacity suit is, in all but name, suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). It is not a suit against the officials. While a damages award against an official in his personal capacity can be executed only against his personal assets, a plaintiff seeking damages judgment in an official-capacity suit must look to the entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Suing County Supervisors for legislative conduct and the Planning Director for enforcing local legislation are official-capacity claims — Plaintiffs can allege no acts in a personal capacity. This is a suit against the County; the Court should therefore dismiss the Individual Defendants.

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

# IV.    ALL CLAIMS FAIL SUBSTANTIVELY

## A.    Plausible Allegations of Fact, Not Speculation, Are Required

This Court may dismiss a claim for failure to allege either: (1) a cognizable legal theory, or (2) sufficient facts to raise a reasonable expectation that discovery will reveal evidence of such a theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

A well-pleaded complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. A plaintiff may not merely allege **conceivable** conduct, but must allege "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts construe allegations most favorably to a plaintiff, they need not accept conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted deductions of fact. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor need they assume a plaintiff can prove facts not alleged. *Assoc. Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Plaintiffs' bald claims of delay in hearing appeals, a non-existent right to jury trial in an administrative proceeding, impropriety in charging costs for administrative proceedings, the potential for (but not the fact of) excessive fines, and a County policy requiring code compliance before new land use rights are conferred all fail to present sufficient factual detail to satisfy the standard. (E.g., Compl., ¶¶ 118–134, 213–223, 549, 554, 571, 574, 578, & 587–603.) A reader can only speculate as to the factual basis for asserting fines are final and collectible, that jury trials are required for administrative fines, new land use approvals are compulsory on properties with uncured violations, and that the County must prevent hearing delays despite the pandemic and acts of the Plaintiffs and their agents.

## B.    The Procedural Due Process Claim Fails

### 1.    The County Gave Adequate Notice and Opportunity for Hearing

Plaintiffs incorrectly plead a substantive due process standard under Procedural Due Process. (Compl. ¶ 511.) To the extent Plaintiffs challenge the County's procedures for administrative appeal

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

and judicial review of NOVs and proposed penalties, they cannot establish inadequate notice or opportunity to be heard. *Circu v. Gonzales*, 450 F.3d 990, 991 (9th Cir. 2006).

Due process does not require a hearing with all the procedures courts provide. An administrative hearing before an impartial decisionmaker the agency employs suffices. *Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983). A procedural due process claim must allege (1) deprivation of a federally recognized liberty or property interest, and (2) inadequate administrative procedure to remedy the deprivation. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018). Procedural due process does not necessarily require "a full evidentiary hearing including the right to confront and cross-examine adverse witnesses." *Club Moulin Rouge LLC v. City of Huntington Beach*, No. CV04-10546SVWRNBX, 2005 WL 5517234, at *5 (C.D. Cal. June 22, 2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Some type of notice and an opportunity to be heard before the deprivation of a protected interest generally suffice and courts routinely determine this as a matter of law. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).[3]

The County's proceedings provide "notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citations omitted). HCC § 352's requirements provide adequate notice and opportunity for hearing and otherwise meet all of the due process requirements — §§ 352-4 (notice); 352-7 and 352-8 (NOV discloses property, violations, potential penalties); 352-8, 352-10 and 352-12 (hearing rights and procedures). (RJN, Exh. NN.) That notice was adequate is evidenced by the fact that Plaintiffs filed timely appeals when they wished to do so. (RJN, Exhs. I, R, GG & VV.) The Code provides that appeals are heard by hearing officers on "sworn testimony" of

---

[3] "The specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

all desiring to testify as to a violation and a proposed penalty. HCC § 352-11. All Plaintiffs received notice and opportunity to be heard. None can allege a procedural due process violation on these ordinances or these facts. The County satisfies due process under *Mathews*.

### 2. Plaintiffs Do Not Allege Improper Delay

Nor have Plaintiffs alleged that hearing delay violates Due Process. One alleging due process violations by delay must particularly allege both improper delay and resulting prejudice. *Twombly*, 550 U.S. at 544; *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir. 1990) (extreme, prejudicial delay in processing appeal required for due process violation); *Fitzgerald v. State*, 1997 WL 579193, Case No. Civ 96-2077-PMX-SMM (D. Ariz. July 9, 1997) (requiring showing of causal connection between alleged due process violation and harm). Prejudice cannot be presumed from delay alone. Plaintiff must plead how any delay deprived him or her of meaningful notice and opportunity to be heard. Plaintiffs cannot. They allege delay alone — with no showing of prejudice or even to whom the delay should be ascribed. Due process requires **opportunity** for a timely hearing; government need not ensure it occurs despite an appellant's non-cooperation.

First, Humboldt's Code requires a hearing no sooner than 15 days after service of notice of violation to allow an appellant to prepare for the hearing — the County has all the evidence it needs before it issues an NOV. HCC § 352-11. Due process sets no firm deadline for an administrative appeal; understandably given the wide range of proceedings at the federal, state, and local levels to which the doctrine applies. *Aiona v. Judiciary of State of Hawaii*, 17 F.3d 1244, 1250 (9th Cir. 1994) (ruling that administrative hearing be held as soon as practical satisfies due process). If delay is overly long and prejudicial, a state or federal court could compel timely action. E.g., *Antoine*, 906 F.2d at 1383 (listing potential remedies for unconstitutional delay in appeal from criminal conviction); *Association of Deputy District Attorneys for Los Angeles County v. Gascón*, 79 Cal.App.5th 503, 537–38 (2022) (review granted) (court could compel District Attorney to perform mandatory duty to plead prior strikes).

Second, facts which this Court may notice show any delay was largely due to Plaintiffs' (in)actions, their counsel's delayed communications, or their fitful efforts to resolve violations. For example, the County currently awaits the Thomases' actions to obtain a permit to maintain or to

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

demolish their greenhouse. Their Compliance Agreement stayed all enforcement for six months

through April 2022. In that month their counsel informed the County they wanted to keep their

building under a new County policy (DPS-22-04). (RJN, Exhs. K, MM, OO). The Thomases plead

they requested a hearing on September 2, 2021. (Compl. ¶ 326.) While no set time requirement for

hearings exists, this timeframe does not exceed reason, particularly in a County that has to juggle

ordinary building compliance issues with myriad cannabis regulation issues amid global pandemic.

Indeed, a trial court recently determined in an unpublished decision on these facts that a two-year

period is not unreasonable. (RJN, Exh. LL., p. 4.) In *White Circle Commerce, LLC v. County of*

*Humboldt* (2022) No. CV2000623 (consolidated with No. CV2000513), the Superior Court

determined the delay aided plaintiffs by allowing time to seek resolution and time for the County to

investigate. See also *U.S. v. Palma*, 7 Fed. Appx. 748 (9th Cir. 2001) (two-year delay in hearing

criminal appeal not excessive); *Antoine*, 906 F.2d at 1382 (three-year delay in criminal appeal

"substantial," but not alone sufficient to violate due process).

Plaintiffs caused some delay and fail to allege prejudice from any delay. Graham settled his

case, which waived any delay claim. (RJN, Exhs. U & V). Olson and the Thomases both led the

County to believe they preferred informal resolution, starting and stopping applications for approval

of remediation plans. (RJN, Exhs. EE, HH, II & KK.) Glad did not respond to the County in 2021.

(RJN, Exh. WW.) None assert any prejudice from delay or inaction by the County.

### 3. Plaintiffs Do Not Allege Deprivation of a Protected Property Interest in Permits or Administrative Citation Proceedings

Plaintiffs' claims they have been deprived of permits without due process and have suffered

administrative citations without due process fail to allege the deprivation of protected property

interests. *Guatay Christian Fellowship v. County of San Mateo*, 670 F.3d 957, 984–985 (9th Cir.

2011). A protected property interest requires a plaintiff to have a "legitimate claim of entitlement to a

benefit, … more than an abstract need or desire or unilateral expectation of it … that is created and

defined by existing rules and understandings stemming from an independent source, such as state

law." *Id.* at 985; *Breneric Assocs. v. City of Del Mar*, 69 Cal.App.4th 166, 181 (1998) (cited by

*Contasti v. City of Solana Beach*, 2013 WL 5727409 at *9, No. 09CV1371 WQH (BLM) (S.D. Cal.

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

302483.v3

Oct. 22, 2013)). Absent a protected property interest, a Section 1983 claim cannot redress even an arbitrary and capricious denial. *Breneric*, 69 Cal.App.4th at 181–182; *Contasti,* 2013 WL 5727409, at *5 (denial of permit based on ordinance yet to take effect).

First, Plaintiffs cannot show any specific process the County was obliged to provide, such as citation supported by more than probable cause, a specific time for a hearing, or lesser potential penalties than the ordinance allows. (Compl ¶508). See *Guatay*, 670 F.3d at 984 (NOV and cease and desist order not deprivation because they do not the property owner of any uses of property or entitle the agency to arrest owner or close business).

Second, no property interest in the issuance of a permit exists until it is approved. (Compl ¶¶508(g) and (h).) A permitting decision must be ministerial and non-discretionary for a due process right to arise as to its issuance. *Breneric*, 69 Cal.App.4th at 183. Discretion must be "so slight" that permit issuance is "virtually assured." *Id.* Even when an observer would believe issuance to have "extremely high" probability, any discretion to deny issuance precludes a property right. *Clark v. Hermosa Beach*, 48 Cal.App.4th 1152, 1180–1181 (1996). Many courts have found land use permits not to constitute protected property due to the permitting agency's discretion. E.g., *Guatay, Contasti, Breneric*, and *Clark supra*. The same rule applies to permit renewal. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164–1165 (9th Cir. 2005).

So, too, here. Plaintiffs' allegations make clear the permits they claim to have been deprived of were neither "virtually assured" nor non-discretionary. (Compl. ¶ 309 [permit may issue only if land use permitted under zoning laws]; 312 [no guarantee County will issue conditional use permit]; 288 [County policy not to permit buildings used to grow cannabis].) Further, there can be no question the County's administrative citations reflect the exercise of discretion, from investigation of a possible violation to the final determination on its existence and determination under the County's ordinances all involve prosecutorial discretion, which is fundamental to most law enforcement in this country. (Compl. ¶¶ 49–50, 61–64, 66, 86–122, 256, 508(a), (b) and (e), 509, 570–580; HCC §§352-5, 352-6, 352-11, and 352-12).

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

## C.    The Substantive Due Process Claim Also Fails

The substantive due process claim fails for these same reasons —  Plaintiffs do not allege a federally recognized property interest.

### 1.    Substantive Due Process Applies But Rarely

A substantive due process claim must allege: (1) a property interest or fundamental right, and (2) a defendant infringed that right by conduct that "shocks the conscience" or suggests a gross abuse of authority. *Metroflex Oceanside, LLC v. Newsom*, 532 F.Supp.3d 976, 981 (S.D. Cal. 2021); *Graham v. Connor*, 490 U.S. 386, 395 (1989). The County's police power allows it to prohibit cannabis cultivation. *Maral v. City of Live Oak*, 221 Cal. App. 4th 975 (2013); Cal. Const., art. XI, § 7. Plaintiffs have no right, and certainly no constitutional right, to grow cannabis — federal contraband. *Id.*; *Gonzales v. Raich*, 545 U.S. 1 (2005). Further, if a particular amendment provides textual basis for a claimed right, courts ought not to apply the "generalized notion of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (high-speed police chase not subject to 4th Amendment subject to substantive due process analysis). Plaintiffs allege procedural due process, which is sufficient to analyze the essence of their claims. Rare resort to substantive due process is unwarranted.

### 2.    The Complaint Does Not Allege Egregious Conduct

Nor do Plaintiffs plead conduct that shocks the conscience or is so arbitrary as to violate substantive due process. (Compl. ¶ 516–547.) The essential question is whether government behavior is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 fn. 8 (1998).

"Only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (cleaned up). Examples include forced pumping of a suspect's stomach, acts evidencing corruption or self-dealing, and bias against an ethnic group. *Giuliani v. Springfield Twp.*, 238 F.Supp.3d 670, 696–97 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018). Examples which fall below this high standard include claims that local officials delayed permits and approvals, improperly increased tax assessments, and

"maligned and muzzled" claimants. *Id.* at 697. The Third Circuit held local officials who intentionally misapplied ordinances and disregarded their state law duty to evaluate land use proposals in good faith did not "shock the conscience." *Highway Materials, Inc. v. Whitemarsh Twp. ("Highway Materials")*, 386 F. App'x 251, 258 (3d Cir. 2010).

Here, Plaintiffs see a substantive due process violation in their dislike of the County's "policy, practice, and custom of issuing citations and imposing penalties for Code violations allegedly related to cannabis cultivation." (Compl. ¶ 517.) This is not shocking behavior, but a policy dispute about appropriate land use regulations and how to enforce them — disputes our separation of powers assigns to the political branches. Regulating cannabis activity is necessary to protect the environment from water quality and other risks, neighbors from unwanted noise and smell, and public safety given that cannabis is highly portable contraband under federal law and its commerce is often conducted in cash and crops often protected by dogs and guns. E.g., N. Lastreto & S. Chaitanya, "Stoned Security: How Cannabis Farmers Protect Themselves in the Emerald Triangle," https://merryjane.com/culture/stoned-security-how-cannabis-farmers-protect-themselves-in-the-emerald-triangle (as of Feb. 2, 2023). This hearsay news report need not be proven true to suggest a rational basis for the County's policy choices.

Plaintiffs' claims, such as permit denials, do not shock the conscience like the rare cases showing a substantive due process violation. The County's policy requiring permits for legal cannabis cultivation and plans to remediate illicit grow are routine administrative law enforcement; they do not violate the body like stomach pumping in search of evidence or defeat fundamental social values as does corruption or ethnic bias. As *Highway Materials* demonstrates, even bad-faith misapplication of ordinances does not violate substantive due process. While Plaintiffs plead ambiguously, the County understands delay and permit denials to be their core. But *Highway Materials* shows that cannot suffice, lest every land use dispute come to federal court in substantive due process guise. Additionally, Plaintiffs' claims they are held responsible for violations of prior owners does not violate. (Compl. ¶128 and 286.) It is a mere statement of California law that a property owner may be responsible for the unlawful condition of property — they are not punished

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

302483.v3

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

for others' misconduct, but for their own inaction. *Erlach v. Sierra Asset Servicing LLC*, 226 Cal.App.4th 1281, 1295 (2014) (buyer obliged to cure unsafe condition of rental housing).

### 3. Plaintiffs Cannot Show County Code Enforcement Lacks a Rational Relationship to a Government Interest

Courts leniently review laws which do not implicate suspect or quasi-suspect classifications or burden fundamental rights, demanding only that classifications rationally relate to legitimate government interests. *U.S. v. Amalfi*, 47 F.4th 114, 123–124 (2d Cir. 2022) (rational basis for Schedule I treatment of cannabis defeats due process and equal protection claims). Plaintiff must show a land use policy lacked any rational relationship to a government interest — an "exceedingly high burden." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008); *Shanks*, 540 F.3d at 1088. Many conceivable public health and safety grounds rationally related the County's policies to routine government interests, as noted above. See also *United States v. Amalfi*, 47 F.4th 114 (2d Cir. 2022) (justifying total ban on cannabis).

The County's Cannabis Code does not implicate suspect or quasi-suspect classifications, nor burden fundamental rights. Accordingly, rational basis review applies, and Plaintiffs fail to show that cannabis regulation lacks a rational relationship to such County interests as environmental quality, preservation of residential quality of life, and encouraging fair competition for those who bear the burn to operate in the nascent legal market for cannabis.

### D. The Excessive Fines Claim Fails, Too

The Eighth Amendment bars excessive fines. *U.S. v. Bajakajian*, 524 U.S. 321, 327 (1998). To avoid the Excessive Fines Clause, a forfeiture must fulfill two conditions: property forfeited must be an "instrumentality" of a crime, and its value must be proportional to the owner's culpability. *Id.* at 326. Proportionality can be judged only in light of a fine actually imposed and its circumstances. *Pimentel v. City of Los Angeles*, 974 F.3d 917, 923 (9th Cir. 2020). "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id.* at 921; see also *People v. Braum*, 49 Cal.App.5th 342 (2020) (upholding $6m fine

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

on landlord for tenant's illicit use of property as marijuana dispensary); *City and County of San Francisco v. Sainez*, 77 Cal.App.4th 1302, 1322 (2000) ($663,000 civil penalty for Housing Code violations not excessive).

Here, the Thomases allege $12,000 a day in fines might reach $756,000. (Compl. ¶ 272 & 301.) Graham alleges $10,000 a day in fines might reach $900,000. (Compl. ¶ 335 & 367.) Olson alleges $104,000 in fines per day for three violations might reach $7,470,000. (Compl. ¶ 432 & 450.) But Plaintiffs do not — cannot — allege the County has actually imposed these fines on anyone. Indeed, the facts noted above show the County seeks to resolve cannabis violations without fines or for far lower amounts — Plaintiff Graham paid only $523 in permit fees. And California courts have upheld far larger fines for persistent, knowing violations of land use laws. E.g., *Lent v. California Coastal Com.*, 62 Cal.App.5th 812 (2021) (upholding $4.185 million fine for blocking public beach access). Until a fine is finally imposed, there can be no claim of constitutional excess. A hearing officer may reduce or suspend fines even after finding violations occurred. HCC §§352-12(a) and (b) (HCC §352-6 penalty factors include severity of offense, complaints received, willfulness of violation); e.g., *Sainez*, 77 Cal.App.4th at 1308 (hearing officer suspended all but $3,380 of $87,000 fine for Building Code violations).

Plaintiffs also allege the County's order to remove unpermitted structures is an excessive fine. Compl. ¶ 565. But the excessive fines clause does not govern this land use standard, which is not a penalty. Illegal construction is, in effect, contraband, and the Constitution is not offended when must surrender that. Even if it were a penalty, it is not excessive under precedent. *Lent* upheld a $4.185 million penalty for refusing to remove an unpermitted deck staircase and gate blocking access to a public beach, analyzing the fine, but not the duty to remove the encroaching construction, under the Eighth Amendment. Similarly, *Sweeney v. California Regional Water Quality Control Bd.*, 61 Cal.App.5th 1093 (2021) found no Eighth Amendment concern in an order to abate unpermitted reconstruction of a levee, upholding $2.8 million in penalties. The fines here are not excessive; any order to remove unpermitted structures does not implicate the Eighth Amendment.

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

### E.    The Alleged Exactions Are Constitutional

#### 1.    Conditioning Land Use Approvals on Code Compliance is Lawful

Plaintiffs attack an alleged County policy to deny new land use permits to landowners who persist in cannabis-related Category 4 violations, citing the Takings Clause's unconstitutional-conditions doctrine. "Though the Takings Clause prohibits the government from 'deny[ing] a benefit to a person because he exercises a constitutional right' or 'coercing people into giving [those rights] up' by imposing unconstitutional conditions on the use of private land, the 'predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing.'" *Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022), cert. denied sub nom. *Ballinger v. City of Oakland, California*, 142 S. Ct. 2777 (2022) (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 612 (2013)). Plaintiffs assert neither ground here.

Plaintiffs assert the County denied them permits to further develop properties subject to pending enforcement actions. They argue the County uses this as leverage to induce owners to settle administrative proceedings. But there is no right to maintain illegal construction. E.g., *Sweeney*, 61 Cal.App.5th at 1093. Plaintiffs do not allege the County would withhold permits from sites brought into compliance with local law. If the claim is as-applied — that construction to be removed was lawful — an administrative appeal allows a forum in which to prove it. No Plaintiff has attempted it.

#### 2.    The Regulations Substantially Further the County's Purposes

So long as government offers a landowner at least one alternative to satisfy requirements that have an essential nexus and rough proportionality to the impacts of proposed development, an unconstitutional condition is not shown. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013). Essential nexus is required between legitimate state interest and permit condition. *Dolan v. City of Tigard*, 512 U.S. 374 (1994). Courts look to the extent of an exaction to determine whether it relates both in nature and extent to the impact of development. *Id.* at 386. A land use permit condition is lawful if it substantially furthers governmental purposes that would justify denial of a permit. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987). Here, government necessarily has a proper purpose to induce compliance with law. Nor is there anything

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

disproportionate about requiring a property owner to bring the very site of a proposed new permit into compliance with law as a condition of new rights. HCC 352-6 (defining Category 4 violations as those with "significant and/or substantial impact on health, safety, comfort and/or general welfare of the public," including unlawful commercial cannabis cultivation.)

The County allows Plaintiffs either to obtain permits to cultivate cannabis lawfully or to remove the means to do so unlawfully. Unpermitted cultivation is illegal and enforcing cannabis laws has essential nexus to health and safety; permits for property on which unlawful conditions are maintained could exacerbate those conditions, furthering harm to the public. One property here has an unpermitted tunnel under a building used for human occupancy. Another has an unpermitted pond, which risks erosion and water quality degradation. Accordingly, requiring Plaintiffs to remediate these conditions or prove them lawful before new permits issue is not irrational or overreaching. This reflects basic principles of our legal system. E.g., Cal. Civil Code, §§ 3514 ("One must so use his own rights as not to infringe upon the rights of another."); 3517 ("No one can take advantage of his own wrong."); 3521 ("He who takes the benefit must bear the burden.").

### 3.   Compliance Agreements Are Constitutional

Agreements to settle (here, "compliance agreements") on such conditions as paying proposed fines and permitting fees, forgoing an administrative hearing on the settled claim, and allowing searches of property to confirm compliance are not unconstitutional conditions. (Contra: Compl. ¶¶549–559.) Compliance agreements are authorized by ordinance to induce responsible parties to correct or remedy violations to protect the public health, safety, and welfare. HCC §§352-13(b); 352-14(c); 314-55 (55.4.10.10) (RJN, Exhs. NN & F). County ordinance authorizes the Director to make compliance agreements. *Id.*  Settlement conditions that closely fit the agency's interest in settling — achieving compliance — do not violate the doctrine, which requires a close nexus between the government interest in a dispute and the right waived. *Emmert Industrial Corp. v. City of Milwaukie, Or.*, 307 F.Appx. 65 (9th Cir. 2009) (waiver of right to sue in exchange for halting demolition of property closely connected to government interest in resolving dispute and achieving compliance); *Louisiana Pacific Corp. v. Beazer Materials & Services Inc.*, 842 F.Supp. 1243, 1251–1255 (E.D.

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

Colantuono, Highsmith & Whatley, PC
670 West Napa Street, Suite F
Sonoma, California 95476-6483

1    Cal. 1994) (severe stipulated penalties if compliance not achieved were not unconstitutional

2    condition of settlement of CERCLA clean-up action).

3       The compliance agreements here impose conditions closely tailored to the County's goal to

4    enforce its laws, such as inspections to confirm compliance, corrective actions including obtaining

5    permits, limiting transfer of property until compliance achieved, and imposing fines compliance does

6    not follow. (RJN, Exh. P [Graham Compliance Agreement at 2(B), (D) and (G)].) By a compliance

7    agreement, the County agrees to dismiss citations, not take enforcement action unless the property

8    fails to comply, and issues a release of the enforcement action, all to the benefit of the property

9    owner. There is nothing unlawful — or even unreasonable — about this.

10      **F.**      **There is No Jury Right in Administrative Hearings**

11       Plaintiffs baselessly plead a jury right in the County's administrative hearings. *Kennerly v.*

12    *United States*, 721 F.2d 1252 (9th Cir. 1983) (administrative hearing requires neither court nor jury

13    trial). Administrative hearings need not be tried to a jury. *Sabri Properties, LLC v. City of*

14    *Minneapolis*, No. 18-CV-3098 (MJD/HB), 2019 WL 1559475, at *8 (D. Minn. Mar. 6, 2019), report

15    and recommendation adopted, No. CV 18-3098 (MJD/HB), 2019 WL 1558490 (D. Minn. Apr. 10,

16    2019). This claim fails on the law and no amendment can save it.

17   **V.**    **CONCLUSION**

18       Plaintiffs lack standing and sue prematurely, defeating all their claims. The Individual

19    Defendants are immune to these claims. Substantively, the County's processes comport with due

20    process and no jury right applies to administrative hearings. No conduct here reaches the high bar to

21    establish a substantive due process claim. No large fine has been finally imposed here and the large

22    fines possible under the County's ordinances for persistent refusal to comply with law cannot be

23    adjudged excessive on their face, but only as applied and many cases uphold even larger fines for

24    willful refusal to comply with land use laws. The unconstitutional exaction claim shows no exaction

25    at all, for requiring one to maintain his property in compliance with law exacts nothing. Moreover,

26    the conduct allegedly coerced is that the County can command — compliance with law.

27

28

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

302483.v3

1    Accordingly, the County asks this Court to dismiss the Amended Class Action Complaint in

2  its entirety. No leave to further amend need be granted because Plaintiffs cannot overcome a plethora

3  of procedural and substantive bars to their claims.

4    DATED:  March 3, 2023                    **COLANTUONO, HIGHSMITH &**
                                              **WHATLEY, PC**
5

6

7                                             MICHAEL G. COLANTUONO
                                              PAMELA K. GRAHAM
8                                             JOHN A. ABACI
                                              Attorneys for Defendants
9                                             COUNTY OF HUMBOLDT, HUMBOLDT
                                              COUNTY BOARD OF SUPERVISORS,
10                                            HUMBOLDT COUNTY PLANNING AND
                                              BUILDING DEPARTMENT, VIRGINIA BASS,
11                                            MIKE WILSON, REX BOHN, MICHELLE
                                              BUSHNELL, and JOHN H. FORD

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

302483.v3